# United Coach Corporation v. Finley.

(Decided May 3, 1932.)

WALTER B. EARLY for appellant.

TYE, SILER, GILLIS & SILER and J. B. JOHNSON for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Reversing.

The United Coach Corporation appeals from a $900 judgment in favor of F. W. Finley for injuries to his automobile.

Appellant operates a bus line between Williamsburg, Ky., and Jellico, Tenn. Appellee, Finley, lives in Williamsburg, and is engaged in selling Franklin automobiles. Lambdin's store is in Pleasant View, a small village situated about five miles south of Williamsburg. For a short distance north, and for about a half mile south of the store, the road is straight and practically level. About 7:30 o'clock on the evening of September 3, 1929, one of appellant's buses was making its regular trip south. On reaching a point 200 or 300 feet north of Lambdin's store, the driver sounded his horn and undertook to pass a Chevrolet truck also going south and immediately in front of the bus. When he pulled to the left from behind the truck he saw the lights of appellee's car 800 or 900 feet away coming north. The Chevrolet truck increased its speed, and the driver of the bus, concluding in view of the approaching car that it was not safe to pass, slackened his speed, fell in behind the truck, and attempted to get the bus on the right-hand side of the road. In doing this the bus assumed a diagonal position across the road with its headlights thrown on a bank to the right. The road was 21 feet wide. According to some of the witnesses the rear of the truck was

about 3½ feet to the left of the center of the highway, while according to the driver of the truck the distance was only 1½ or 2 feet. While the bus was in this position and moving slowly, appellee's car came along at a speed estimated by appellee and the various witnesses at from 30 to 45 miles an hour, and collided with the rear end of the bus. The accident occurred near the Lambdin store, and the evidence discloses that at the time appellant's driver attempted to pass the truck the Finley car was near the Moses garage, which is about 900 feet south of the store. When the collision took place the bus was 30 to 40 feet to the rear of the truck. After the car struck the bus it ran for a distance of 140 to 150 feet. When the accident occurred the headlights and marker lights on the bus were burning, but one of the passengers stated that the lights inside the bus were not burning. According to appellee he was looking for lights, and saw them north of the place of the accident. There was a confusion of lights and he did not understand them. In meeting bright lights the effect is blinding. The only thing you can see on the road is another light. If there is another light you will see that, but you would not see an object or anything but a light. He naturally assumed that the roadway was clear. He could not have avoided the accident if he had been driving 20 miles an hour, for the reason that it occurred in behind the bright lights of the bus in the dark, with nothing to indicate its position, and he was assuming that there was not anything there. There was evidence that one of the passengers on the bus observed the lights of the approaching car before the bus pulled out to pass, but no evidence as to how far the car was away at that time. One witness testified that a car equipped with four-wheel hydraulic brakes, and in good condition, could be stopped on a gravel road in 30 feet. Another witness said that a car going at the rate of 20 miles an hour could be stopped in 15 feet, and that one going 30 miles an hour could be stopped in 25 feet.

In view of the conclusion of the court it will not be necessary to discuss the instructions as a whole. However, there is an error in instruction No. 1 that cannot be overlooked. In addition to the enumeration of other duties, the instruction proceeds as follows:

> "And it was the duty of the driver of said bus to so operate, manage and control same that its

presence upon the left side of the highway would not be concealed or hidden from the driver of an automobile traveling in the opposite direction and approaching near to said bus, and to give warning by the sounding of a horn or to have said bus illuminated by lights so that its presence in such position would not be concealed from the driver of an approaching automobile.''

In incorporating the foregoing duties in the instruction, the court was evidently influenced by the fact that there was evidence that the headlights had been deflected to the right, and some witness stated that the bus was not illuminated. On the bus were all the lights required by law. The illumination of the inside of the bus is for the benefit of the passengers and not for passing motors. In the very nature of things the driver could not turn to the right for the purpose of getting off the left side of the road without his lights being deflected to the right. This is a situation often presented, and it is going too far to require the driver, whose attention must be on other duties, to see that the bus is illuminated for the benefit of other motorists. In the circumstances they should rely on their own headlights.

It frequently becomes necessary for a motorist to pass another going in the same direction. This is particularly true of buses that operate on a fixed schedule. In such a case the proper method to pursue is for the driver of the machine following another to pull out to the left so that his view may be unobstructed. If it then appears that there is no car approaching so near as to make it dangerous to pass, he may sound his horn and make the attempt. If, however, after he begins the attempt to pass, it becomes reasonably apparent to a driver of ordinary prudence in his situation that the approaching car is so near, or is traveling at such a high rate of speed as to make it dangerous to continue the attempt, he should slacken his speed and use ordinary care to get over on the right-hand side of the road and fall in behind the car in front. But the failure of the passing motorist to perform any one of these duties will not absolve the driver of the approaching car from all responsibility. He is charged with keeping a lookout, and when the danger of a collision becomes apparent, if a passing motorist persists in his efforts to pass, or decides

to give up the attempt and fall back in the rear of the car in front, he should reduce his speed, have his car under reasonable control, and use ordinary care to avoid an accident. He may not go forward at such a high rate of speed as to make it impossible to prevent a collision, and then lay the entire blame on the passing motorist. The evidence before us discloses the following situation: When the driver of the bus pulled to the left for the purpose of passing the truck, the Finley car was from 900 to 1000 feet away. When seen by the passenger on the bus before that time it must have been still further away. It hardly can be said that the driver of the bus was guilty of negligence in attempting to pass the truck when the Finley car was that far away. It is admitted that, before the driver of the bus attempted to pass, he sounded his horn. There can be no doubt that, if the driver of the truck had slackened his speed as required by the statute, Kentucky Statutes, sec. 2739g-41, the driver of the bus could have passed in safety. Instead of doing this the driver of the truck increased his speed. When this occurred, the driver of the bus concluded that, owing to the nearness of the Finley car, it was not reasonably safe to persist in the attempt to pass the truck. He then slackened his speed and undertook to fall in behind the truck and get on the right-hand side of the road. Before he could do this, the Finley car struck the rear of the bus. At most, therefore, it would seem, if there was any negligence on the part of the driver of the bus, it consisted solely of his failure to use ordinary care to slacken his speed and get off the left-hand side of the road after he discovered, or in the exercise of ordinary care could have discovered, that the Finley car was so near as to make it dangerous for him to continue his effort to pass the truck. But even if we assume that the driver of the bus was negligent, not only in this respect, but in his original attempt to pass the truck, the operation of the Finley car cannot be overlooked. Dr. Finley admits that he was keeping a lookout and saw the lights of the truck. As the bus ran along beside the truck for some little distance he must have seen the lights on the bus, and observed the bus as it attempted to fall in behind the truck. He says, as he approached, there was a confusion of lights due, no doubt, to the fact that, as the bus pulled to the right, its lights were deflected to the right. The last time he looked at his speedometer he was going 30 miles an hour. After that he speeded up some.

Other witnesses say that he was going from 40 to 45 miles an hour. Not only was he going in excess of the statutory rate of speed of 30 miles an hour, but he admits that he was blinded by the lights of the truck and could not see. Being charged with knowledge of the fact that the bus had fallen in behind the truck for the purpose of getting off the left-hand side of the road, he had no right to assume that that portion of the road was clear. An ordinary Chevrolet truck is from 14 to 18 feet long. The bus was from 30 to 40 feet to the rear of the truck. If he had been going at a reasonable rate of speed, he could easily have stopped his car and have avoided the collision. As it was he came forward at such an excessive rate of speed that the collision was inevitable. In our opinion he was guilty of contributory negligence as a matter of law, and the court should have directed a verdict in favor of appellant.

Judgment reversed, and cause remanded for a new trial consistent with this opinion.