## Huber & Huber et al. v. Noe's Administratrix.

(Decided Feb. 13, 1934.)

WOODWARD, HAMILTON & HOBSON and B. J. BETHURUM for appellants.

C. C. WILLIAMS for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Reversing.

Laura Noe, as administratrix of her deceased husband, Grant Noe, brought this suit against William Huber, Lewis Huber, and Nance Huber, doing business under the name and style of Huber & Huber, and Edward Uhl, to recover damages for his death. The first trial resulted in a hung jury. On the second trial the jury returned a verdict in favor of plaintiff for $5,000. The defendants appeal.

The first error relied on is the failure of the court to direct a verdict in favor of the defendants. This contention requires a brief resume of the evidence. The accident occurred on April 29, 1931. The deceased, Grant Noe, who was in a Nash touring car, accompanied by his uncle, W. L. Noe, was driving north from Mt. Vernon toward Brodhead. Edward Uhl, who was driving a truck belonging to appellants, was coming south. According to W. L. Noe, the car in which he was riding was going from 20 to 30 miles an hour. He saw the lights of another car about 100 yards away. When he first saw the truck, it was on his side of the road, and

just before they passed it it turned to its own side of the road. His car hit the truck about the center, and the rear end of the truck was then 3 or 4 feet on his side of the road. So far as he knew, his car did not slow up from the time he first saw the truck until the collision occurred. He did not know whether Grant Noe was keeping a lookout, but the headlights on his car were burning. They passed an automobile on Tunnel Hill, which was going very slow, about 7 or 8 miles an hour. Ben Purcell, who got to the accident shortly after it happened, saw tracks on the road showing that the rear end of the truck was about halfway upon its left side of the road, and the front end was on its own side of the road, and the center of the truck about the center of the road. He noticed tracks back of the truck for some distance. The truck was running near or about astride of the center part. The car was off the center line on the right-hand side going toward Brodhead. There was blood 2 feet off the center line of the right-hand side. After the accident he drove his car to the right-hand side of the truck as you go south, but one of his wheels ran upon the bank 6 or 8 inches. Joe Noe, cousin of the deceased, arrived after the accident and saw the truck track on the left side of the road about 3 feet. Charlie Newton, who accompanied Purcell, says that the truck was in the center of the road and was beginning to pull out of the road. Half the truck was on its left side. When Ed Mink saw the truck, the front end was on its side of the road and the back end about 2 feet on its left side. There was a pool of blood about middleways of the right side of the road going north. Noe's automobile was lying across the road opposite the middle of the truck. Denny Sowder, who came to the scene of the accident several hours later, found a pool of blood about 2½ or 3 feet from the edge of the road on the right-hand side going north. The tracks from the rear wheels of the truck were 2½ to 3 feet on Noe's side of the road. The metal part of the road is 16 feet. Cleve Simpson found the tracks for 35 feet behind the truck, and these tracks were about 2 feet over on his left side of the road. The blood was about the center of the right-hand side of the road going north.

For appellants, Edward Uhl testified that he was driving a three-ton International truck, which was 7½ feet wide. This truck was going 10 miles an hour in low gear and he continued in low gear until the time of

the accident. He saw the Noe car 700 yards away. It was approaching at a high rate of speed and was weaving in the road. Noe came over on the truck's side of the road about 50 yards away, went back to his own side of the road, and came back again, striking the truck at the door on the left side of the driver's seat 6 feet behind the front end of the truck. When about 50 yards away he was going 50 miles an hour, and did not slow up any before he struck the truck. He pulled the truck as far to the right as he could get it, and had the right front wheel sitting off the metal of the road. Paul Gravely, who lives at Brodhead, was in the car which Noe passed on Tunnel Hill. Witness was driving between 30 and 35 miles an hour. He was a quarter of a mile behind Noe at the time of the accident. The metal part of the road is 16 feet wide with a 2-foot shoulder on each side. When Purcell's car went around the truck, the left wheel was in the ditch and the right wheels were about 3 feet up on the bank, and the car was almost ready to turn over. Robert Hendrickson and Albert Frith, who were in the car with Paul Gravely, testified to substantially the same facts. Albert Martin got to the scene of the accident a little later, and testified that the truck was entirely on its right-hand side of the road. R. B. Bird went to the scene of the accident and found the battery plates from the truck 2½ or 3 feet on the truck's side of the road.

It is clear that there was substantial evidence tending to show that at the time of the accident the truck was on the wrong side of the road, but it is insisted that the deceased was guilty of contributory negligence as a matter of law. The argument is that if Noe had been keeping a lookout he would have seen the truck in ample time to have stopped his car, or to have turned it off the road far enough to avoid colliding with the truck. The accident did not happen on a sharp curve, as in the case of Lexington-Hazard Express Co. v. Umberger, 243 Ky. 419, 48 S. W. (2d) 1066; nor does the evidence conclusively show that Noe was exceeding a speed of 30 miles an hour, as was the case in United Coach Corporation v. Finley, 243 Ky. 658, 49 S. W. (2d) 544. On the contrary, the evidence as to speed was conflicting. We are not prepared to say that every motorist whose car collides with another car on the wrong side of the road is guilty of contributory negligence as a matter of law, regardless of his rate of speed, or other circumstances.

He has the right to assume that the approaching motorist will be on his side of the road, or, if on the wrong side, that he will pull to his right and not obstruct the road to such an extent as to make it perilous for him to pass. All that is required of him is that he shall use ordinary care to avoid a collision, and in the absence of uncontradicted evidence as to excessive speed, or other circumstances clearly showing a failure to exercise such care, the question is for the jury and not for the court. Here the jury found that Grant Noe was not guilty of contributory negligence, and we are not prepared to say that its finding is flagrantly against the evidence.

Complaint is made of instruction No. 1, telling the jury that it was the duty of the driver of the truck ''to reasonably turn to the right of the center of the highway so as to pass other vehicles approaching without interference.'' The argument is that the statute merely requires that the vehicle shall be operated on the right-hand side of the highway unless the left-hand side is unobstructed for 150 feet; whereas, the quoted language was such as to authorize the jury to conclude that it was the duty of the truck driver to be so far on his own side of the road as to prevent appellants' car from striking it. The statute does not merely require that vehicles shall be operated on the right-hand side of the highway unless the left-hand side is unobstructed for 150 feet. Its language is ''shall travel upon the right side of such highway *whenever possible, and unless* the left side of such highway is clear of all other traffic or obstructions and presents a clear vision for a distance of at least one hundred and fifty feet ahead.'' Section 2739g-35, Kentucky Statutes. Here it was not only possible for the truck to be on the right side of the highway, but as the Noe car was approaching the highway was not ''clear of all other traffic.'' The instruction does not put upon the truck driver the absolute duty to turn to the right of the center of the highway so as to pass other approaching vehicles without interference, but uses the words ''to reasonably turn to the right of the center of the highway,'' etc. The word ''reasonably'' limits the duty of the truck driver, and we are not inclined to the view that the jury was authorized to conclude that the truck driver was required to do anything that was unreasonable. We therefore hold that the instruction was not erroneous for the reason assigned.

Another complaint of the instruction is that it told the jury that it was the duty of the driver of the truck "to drive at a rate of speed not greater than was reasonable or proper, having regard for the traffic in the use of the highway," and authorizing a finding for plaintiff if he failed in the performance of that duty. The ground of attack is that all the evidence showed that the truck was barely moving, and that there was no evidence whatever of unreasonable speed. It is the general rule, of course, that an issue, concerning which there is no evidence, should not be submitted in the instructions; but it is not every case where the submission of an issue without evidence is regarded as prejudicial error. Even in this case we would not be inclined to that view if the error relied on stood alone. However, it does not stand alone, but must be considered in connection with the statement made by appellee's counsel in his argument to the jury that W. L. Noe testified that appellants' truck was going 20 to 30 miles per hour at the time of the accident. When this occurred, appellants' counsel objected to the statement on the ground that the witness did not so testify, and moved the court to have the stenographer read to the jury the evidence of W. L. Noe on the subject. The court overruled the objection with the statement that the jury would remember the evidence. In Greenwell v. Commonwealth, 125 Ky. 192, 100 S. W. 852, 30 Ky. Law Rep. 1282, it was pointed out that the court should not leave it to the jury to determine whether counsel is going out of the record or not; that if he is going out of the record the court should sustain the objection and stop the argument, and, if not out of the record, the court should overrule the objection; that if the court does not remember the evidence he should refresh his recollection; that the jury should not be allowed to hear an improper argument with the admonition that they should disregard it if it was outside the record, as this leaves to the jury a matter which the court should determine. No doubt it is true, as said by counsel for appellee, that he made the statement based on the evidence of W. L. Noe, as given on the first trial; but the fact is that the statement was made, and there was no evidence on which to base it. In the circumstances the court should have sustained the objection to the statement, and have admonished the jury not to consider it. As counsel stated that W. L. Noe testified that the truck was going from

25 to 30 miles an hour, and such evidence was the only evidence of unreasonable speed, we are constrained to hold that the failure of the court to sustain the objection to the statement, coupled with that part of the instruction authorizing a recovery if the truck driver failed "to drive at a rate of speed not greater than was reasonable or proper," was prejudicial error.

Judgment reversed, and cause remanded for a new trial consistent with this opinion.