## Blue Grass Coal Corporation v. Combs, Administrator.

(Decided November 28, 1924.)

### Appeal from Perry Circuit Court.

1. Master and Servant—Mining Company's Violation of Statute and Negligence in Keeping Dynamite Caps in Commissary Held Not Proximate Cause of Explosion.—Mining company, if guilty of violating Stats., section 2734, by keeping small quantity of dynamite caps in commissary, and if negligent in keeping such dynamite caps in its commissary on shelf 4 or 5 feet from emery wheel, was not liable for death of employee who sharpened knife on emery wheel only 8 or 10 inches from box of caps which he took from shelf, opened and placed by the wheel, where sparks ignited it, since such violation of statute and such negligence was not proximate cause of ensuing explosion.
2. Negligence—Must have been Proximate Cause.—Negligence to be actionable must have been proximate cause of injury.

FAULKNER, STANFILL & FAULKNER and J. R. SIMMONDS for appellant.

DENNY P. SMITH, WOOTON, SMITH & WOOTON, JESSE MORGAN, MORGAN, EVERSOLE & BOWLING and EARNEST K. LITTLE for appellee.

OPINION OF THE COURT BY TURNER, COMMISSIONER—Reversing.

Appellee's intestate, Harrison Combs, was an employee in appellant's commissary which it operated in connection with its coal mining plant in Perry county.

On the 25th of June, 1919, Combs was killed by an explosion of dynamite caps in the commissary, and this action by his personal representative is for damages be-

cause of his death. · The negligence alleged is that defendant contrary to law, and therefore negligently, kept dynamite caps in its said commissary for sale, and in addition it kept such caps stored therein so near or adjacent to an emery wheel, which it used in its business, as to make decedent's place of work unsafe, and that such unlawful storing and negligent keeping of the dynamite caps at such place was the proximate cause of the explosion resulting in his death.

The answer was a complete denial, except that the company admitted the keeping· of small quantities of dynamite caps in its commissary for the use of its miners, and alleges they were kept in metal containers on an upper shelf, where they were placed in a still larger container, and that when properly handled and replaced they were in a safe place. In separate paragraphs contributory negligence and assumed risk were each pleaded.

Without deciding or even intimating that defendant was guilty of violating section 2734, Ky. Stats., by keeping in its commissary a small quantity of dynamite caps, and without intimating that defendant was guilty of negligence by keeping such dynamite caps stored in its commissary at a place four or five feet from and high above the emery wheel, it may be safely said that the evidence fails to show such causal connection between the storing of such dynamite caps at that place and the explosion as makes the explosion the proximate result of such storing.

The manager of the commissary was made a joint defendant with the coal corporation, and at the end of a trial in the circuit court the jury found for the individual defendant, and returned a verdict for the plaintiff for $10,000.00 against the coal corporation.

The evidence discloses that the company employed about 300 persons in connection with its coal mining business, and that it operated in connection therewith a general store called a commissary, wherein it sold goods chiefly to its employees, but had some customers who were not such. The main commissary building where the explosion occurred was about 50 feet in length and about 30 feet wide; there was a counter on each side of the main entrance running back some distance toward the rear, and there was at the rear of such counters a cross counter which left at the rear of the storeroom some considerable space in which the meat department of the commissary was operated. There was a meat box and ice chest

behind this cross counter, and on each side extending to the rear end of the store were shelves for the keeping of goods; along the side and behind each of the main counters, and practically on a level therewith, was a base shelf extending out some 10 or 12 inches further than the main shelves higher up. The dynamite caps were kept on the third or fourth shelf above this base shelf at or about the rear of the shelves on the left-hand side, and about four or five feet from and considerably higher than the emery wheel used by the corporation in sharpening the knives for use in its meat business. The emery wheel was in a sort of metal frame and was clamped or fastened to the base shelf extending out from under the shelves higher up in which goods were kept. The dynamite caps were kept in a small metal container, each having a metal top upon it, and these containers in turn were kept on an upper shelf in a larger paper container. At the time of the explosion the company had on hand in the commissary, and stored as indicated, something less than 400 of these caps, that is, three boxes containing one hundred each, from which no caps had been taken, and one box from which there had been sold some of the caps.

Harrison Combs, prior to his employment by appellant, had had experience in the handling and storing of explosives as an employee of another mining company, and at the time of his employment by appellant, and thereafter before the explosion, it was explained to him where the company kept in the commissary the dynamite caps, and he was directed when he waited on a customer in the sale of such caps to immediately replace the metal top upon the box and replace the box in the larger carton on the upper shelf where they were kept. He was a general employee or salesman, and waited on customers in the main store, and in addition to his other duties sometimes waited upon persons desiring to purchase meat.

On the afternoon in question Charlie Smith, a miner, working for the company, and who had known Combs for a long time, went into the commissary, called Combs and told him he wanted 25 cents' worth of dynamite caps, a roll of a certain kind of paper and three pounds of pork chops. Combs reached upon the shelf, just about as high as "where a common man could reach up to it," took down one of the little square metal boxes, opened it and took from it ten of the dynamite caps (25 cents' worth), put them in a small paper bag and gave them to Smith. He then went to some other nearby place where he got

the paper and delivered that to him. Smith then told him he wanted three pounds of pork chops, and Combs said he would first have to sharpen his knife, whereupon Smith said to him to go ahead and he would go up to the front of the store and get some more script, and as Smith went to the other part of the store Combs got the knife from the meat block, stepped to the emery wheel that was fastened to the base shelf, and began to grind the knife, when Smith turned from the counter and went to the other end of the store; just as Smith reached the other end the explosion occurred.

These statements were testified to by Smith, and there is no contradiction of them in the evidence. Smith does state, however, that he. does not know whether Combs, when he took the ten dynamite caps out of the metal container, replaced that container upon the higher shelf where it came from and in the larger container, or whether he temporarily set it down on the base shelf until he should have concluded waiting on him. But another employee of the commissary states that just immediately before the explosion his attention was directed by still another employee to Harrison Combs where he was sharpening his knife, and that there he saw the box of dynamite caps on the base shelf some 8 or 10 inches from the emery wheel, which Harrison Combs at the time was turning very fast, and from which the sparks were at the time flying. This witness further states that his attention was so directed just immediately before the explosion, and that when he looked and saw the situation he actually hollered or started to holler to warn Combs, but that if he actually did holler his voice was drowned by the explosion which occurred immediately. The statement of this witness that he saw the box of caps on the base shelf only 8 or 10 inches from the emery wheel is unmistakably corroborated by the fact that the hole in the shelf caused by the explosion is in that exact locality.

Other evidence discloses that in using the emery wheel Combs was so situated that he must have seen and known the exact location of the small metal box of dynamite caps.

The whole evidence shows that Combs was the last employee who had sold any dynamite caps, and that he had sold them just a short time before the explosion, and

had sold them to a customer who wanted two other articles besides the dynamite caps.

From these facts and circumstances, which are uncontradicted, it appears to be conclusive that Combs himself when he took down the small metal container and waited on his customer, contrary to orders, failed to replace it in the larger container higher up on the shelf, but in fact left it with the top off within a few inches of the emery wheel which he himself immediately thereafter used in such way as to bring about the explosion.

The dynamite caps left higher upon the shelf in their customary place did not explode, and it seems to be perfectly clear that even if it was negligence to have them in the commissary at all, or if it was negligence to have them thus stored on an upper shelf a few feet from the emery wheel, that neither of those things had any connection whatsoever with the explosion; but that it was brought about wholly by the failure of Combs himself to replace the top on the metal container and in turn replace that in the larger container upon the upper shelf, both of which things he had been specially directed to do.

The cause of the explosion is made perfectly clear by the evidence, and if defendant might be deemed negligent in either of the respects charged, still it remains certain that such negligence did not bring about the explosion, and that there was no causal connection between any such alleged negligence and the explosion itself.

To authorize a recovery in such actions there must be not only negligence by the defendant, but that negligence must be the proximate cause of the accident producing the injury. No matter how negligent one may be, if his negligence does not result in injury to another the latter has no ground of recovery.

It is made very plain by the whole evidence that neither the keeping of the dynamite caps in the commissary nor the storing of them on an upper shelf some 4 or 5 feet from the emery wheel brought about this explosion, but that same was in fact brought about by the careless and reckless handling of the same by the decedent, contrary to the orders of his employer.

The directed verdict asked for at the conclusion of all the evidence should have been given, but no other question is passed upon.

The judgment is reversed with directions to grant appellant a new trial, and for further proceedings consistent herewith.