# Lexington-Hazard Express Company v. Umberger.

## Same v. Gamble.

<(Decided April 19, 1932.)

N. R. PATTERSON and W. A. MINIHAN for appellant.

J. C. BAKER and JAMES SAMPSON for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE DIETZMAN— Reversing.

About 11 o'clock on Saturday night, August 16, 1930, Lloyd O. McLane was driving a Model T Ford northwardly on the state highway that runs between London and Livingston, Ky. Just after rounding a sharp curve which curved to his right, one of the wheels of his car came off. The car was thrown by this mishap at such an angle across the road that it was impossible for any car going in the same direction as McLane had been driving to pass it except on the left-hand side of the road and even the space left on that side of the road was so narrow as to make passage there difficult. The road at this point ran along the side of a hill. To the west of the road the ground dropped in a sharp declivity to the Rockcastle river. To the east of the road and separated from it by a ditch some two feet in depth was the hillside.

Just after McLane's accident a large truck of the appellant which was going north on the road came up behind McLane's car. Due to the size of the truck it was not possible for it to pass McLane's car. There were two men employees of the appellant on the truck. They parked the truck on their right-hand side of the road, but there is some dispute as to how near the edge of the right-hand side of the road they got the wheels of their

truck. The tail-light fastened on the left-hand side of the rear of the truck was burning and continued to burn throughout the incidents herein set out. With the headlights of the truck shining on McLane's disabled car, these two men got out of the truck to assist him in putting the wheel back on his car and clearing the road. They had worked thus for about ten minutes when an automobile going southwardly and driven by B. C. Barton came up. Barton got his automobile around the McLane car with difficulty, but having done so, easily passed the truck and continued on his way south. As he rounded the curve above mentioned and which was just south of where the truck and McLane car were parked, the appellee Gamble, driving the Model A Ford sedan of the appellee Umberger, passed him. Gamble was alone in the car. He testifies that as he passed Barton he was going about twenty-five miles an hour, that the lights of the Barton car blinded him for a moment or two, and that when he got his vision back he then saw the appellant's truck looming up before him about ten or fifteen feet distant. He was unable to do anything after seeing the truck and the Model A Ford ran into the rear of the truck. The force of the impact was such as to practically destroy the Model A Ford. Gamble was knocked unconscious and very severely hurt. Both he and Umberger, the owner of the Model A, brought their respective suits to recover damages, Gamble for his personal injuries and Umberger for the property damage done his car. The cases were heard together, and on the trial Umberger recovered a verdict of $375, and Gamble one for $1,000. The appellant has appealed from the Gamble judgment and has prayed an appeal from the Umberger judgment. The ground for reversal of both judgments is that the appellant was entitled to a peremptory instruction. This ground is based on two contentions: First, that no negligence was shown on the part of the appellant; and, secondly, that Gamble was guilty of contributory negligence as a matter of law.

There is a sharp dispute in the evidence as to just where McLane's car and the truck were parked with reference to the sharp curve just to the south of them. But for the purpose of testing the correctness of appellant's position on this appeal we must take it that there was ample evidence to sustain the appellees' position that the truck and Model T Ford were parked within one hundred feet of the curve to the south of them, and

that the curve was so sharp as that the view for a distance of at least one hundred and fifty feet from the curve was obstructed by such curve. Section 2739g-48 of the 1930 Supplement of Carroll's Kentucky Statutes provides:

"The driver of any motor vehicle desiring to stop upon any highway for the purpose of receiving or discharging a passenger, shall drive said motor vehicle to the extreme right side of the main traveled portion of any public highway before stopping for said purpose, nor shall any person be permitted to stop any motor vehicle or leave same standing upon the main travelled portion of any public highway nor upon any intersection thereof except for the purpose of receiving or discharging a passenger. Provided, however, that this section shall not apply to a vehicle which may be disabled while on such main travelled portion of the highway in such manner or to such an extent that it is impossible to avoid the occupancy of said main travelled portion or impractical to remove the same therefrom until repairs shall have been made or sufficient help obtained for its removal. No person shall be permitted to stop motor vehicle upon highways for any other purposes provided in this section at any point within 100 feet from the brow of a hill or curve in the road which obstructs the view for a distance of less than 150 feet from the said crest, curve, or other obstructions."

The appellees argue that by parking its truck within one hundred feet of the curve mentioned the appellant violated this section of the statutes, and that as this was the cause of the accident the violation of this statute furnished the appellees grounds for a recovery of the damages they respectively sustained because of such violations. On the other hand, appellant argues that the prohibition against parking even within one hundred feet of a curve does not apply to a disabled automobile, and that although the truck of the appellant was not in fact disabled, yet as it was unable to pass the McLane car until the road was cleared it was constructively disabled within the meaning of the statute. We shall not attempt to decide between these conflicting contentions, but shall solely for the purpose of this decision assume that in parking its truck where it did and letting it remain there

for so long a period of time as it did while the drivers were assisting McLane in fixing his car and clearing the road, the appellant was guilty of the negligence of which the appellees complain. We are then confronted with the proposition whether the appellees are barred because Gamble on this occasion was guilty of contributory negligence as a matter of law.

It will be remembered that Gamble testified that he passed the Barton car and rounded the curve just south of appellant's parked truck at a speed of about twenty-five miles an hour. He further testified that the lights of the Barton car blinded him as he passed it and that his vision did not clear until he was within ten or fifteen feet of the truck. His testimony further establishes that he did nothing when blinded by the lights of the passing car of Barton in the way of slackening his speed, or taking any precaution to avoid colliding with anything or person who might be in the path of his car, but whom he could not see because of his momentary blindness. The evidence also establishes that the truck, although it may have been parked within one hundred feet of the curve as the appellees contend, was yet parked far enough away from it as that Gamble could have easily seen it after rounding the curve and avoided running into it, but for the fact that he was blinded by the lights of the passing Barton car, and took no precaution to avoid colliding with whatever might be in his path ahead. It is argued by appellant that in rounding the curve at a speed of twenty-five miles an hour, Gamble violated subsection 2 of section 2739g-51 of the 1930 Supplement of Carroll's Kentucky Statutes, which provides:

"Where a highway passes through the residence portion of any city or town or around any sharp curve, or on a steep grade in or outside of such city or town, if the rate of speed of passing automobiles exceeds thereon twenty miles an hour it shall be prima facie evidence of unreasonable and improper driving."

But we need not decide the conflicting contentions of appellant and appellees as to what this statute means, for it is quite apparent that this accident would have happened under the circumstances just the same had Gamble been driving the twenty miles an hour the appellant says he should have been driving instead of the twenty-five miles per hour he admits he was driving, because he was

not aware of the presence of the parked truck until his vision cleared and that was when he was within ten or fifteen feet of the truck, too late to avoid hitting it, whether he was driving twenty or twenty-five miles per hour. The real reason Gamble ran into this parked truck was that although blinded by the lights of the Barton car, he continued along without taking any precaution to avoid hitting what might be in his path, when, had he taken the precaution of slackening his speed and having his car under such control as to be able by the exercise of ordinary care to avoid hitting what might be ahead of him, he could have easily avoided this collision.

The appellees argue, however, that there was no such duty on the part of Gamble; but that he had a right to assume that the road ahead of him was clear and that he had a right to drive as he did without slackening his speed or having his car under the control above mentioned, and they cite many cases from foreign jurisdictions to sustain their position. Per contra, the appellant cites some cases from other foreign jurisdictions to the effect that when the driver of a motor vehicle is unable to see ahead, he must stop or proceed at his peril. This court, however, in the cases of City of Providence v. Young, 227 Ky. 690, 13 S. W. (2d) 1022, and Downing v. Baucom's Admx. 216 Ky. 108, 287 S. W. 362, both of which cases involved the proposition of the driver of the automobile being blinded by the lights of a passing automobile, declined to follow those jurisdictions, which say that the driver under such circumstances must stop or proceed at his peril, as well as those jurisdictions which say that he has a right to proceed on the assumption that all is clear before him. In the Downing case, we said that under the condition of being blinded by passing headlights, it is the duty of a driver of an automobile to slacken his speed, give warning of his car's approach, and have it under control. In the City of Providence case we held that despite the fact that the driver of an automobile on the highway has the right to assume that the city had performed its duty of keeping the streets in a reasonably safe condition for public travel, it is his duty when blinded by the lights of a passing car to proceed with due caution, keep upon the righthand side of the road, and, if necessary, take such precaution as ordinary care in the circumstances might suggest or require.

It is true that in the City of Providence case, we held that whether the driver of the automobile, who was

blinded by the lights of a passing car, was guilty of contributory negligence in continuing as he did on the road or not, was a question for the jury in that case, but that was because of the proposition, as stated in the opinion, that when the circumstances are so equivocal that reasonable men might disagree as to the particular duty or course of conduct demanded by the situation, the matter must be determined by the jury. But in the instant case, the evidence clearly establishes without contradiction that Gamble when blinded by the lights of the Barton car did nothing in the way of slackening his speed or taking any precautions to avoid colliding with what might be in his path. He was rounding a sharp curve. He could not know whether the road around the curve was clear or not. Had appellant's truck been just around the curve but traveling at a slow rate of speed, instead of being parked as it was, Gamble would have crashed into it just the same. Under the circumstances of being blinded by the Barton lights and not knowing what was just around the curve, Gamble was under the duty of at least taking some of the precautions outlined. See Downing and City of Providence cases. It is admitted he did nothing. Hence there was no question for the court to submit to the jury on this matter of contributory negligence, and it should have peremptorily instructed the jury to find for the appellant.

The judgment in the Gamble case is reversed. In the Umberger case, the appeal is granted and the judgment is reversed. In both cases, a new trial will be granted appellant consistent with this opinion.