## Marsee v. Hunt's Adm'x.

(Decided Dec. 13, 1932.)

504

C. E. RANKIN and HENRY JACKSON for appellant.

E. C. NEWLIN, Jr., C. C. BAGBY and I. C. JAMES for appellee.

OPINION OF THE COURT BY CREAL, COMMISSIONER—
Affirming.

In an action by Loretta Hunt, administratrix of the estate of her deceased husband, Walter Hunt, against Floyd Marsee, James A. Taylor, and James Carroll Ross, for damages for the death of decedent, alleging that it was caused by the negligence of defendants in the operation of an automobile, judgment was recovered against Marsee in the sum of $1,000, and he has appealed.

For reversal it is urged that the evidence as to declarations and statements made by appellant and his codefendants are incompetent because obtained in violation of Ky. Stats., secs. 1649b-1—1649b-4, known as the "Sweating Act." Further, that there was no evidence to establish negligence on the part of appellant, and that he was therefore entitled to a directed verdict.

The proven facts and circumstances, in substance, are that about daylight on May 3, 1930, the body of a man was found lying on the roadside on State Highway 35 between Harrodsburg and Danville. Officers who were notified removed the body to an undertaking establishment at Harrodsburg, where it remained until late in the afternoon, when it was identified as the body of Walter Hunt. When found, the pockets of the trousers worn by deceased were turned inside out, and an examination revealed that the left ankle had been broken and the leg otherwise injured. There were two curved gashes on the head, possibly a fracture of the skull, and other bruises and injuries on the body. This condition gave natural rise to the suspicion of foul play with robbery as the motive. Excitement ran high, and rewards were offered for the apprehension of the guilty party or parties, but mystery shrouded the circumstances attending the death of Hunt until sometime in the following August. Prior to that time, it seems, it was known that Marsee, Taylor, and Ross were seen on this highway the night before the body was found, and certain actions of Taylor caused suspicion to attach to him. Ross was first called before officials at Harrodsburg, and after being questioned at length, admitted that the automobile in which he, Marsee, and Taylor were riding struck and killed Hunt. The other young men were sent for, and after being questioned at considerable length and informed as to what Ross had stated, they also admitted that Hunt was struck by the automobile in which they were riding.

Undisputed facts are that the automobile belonged to Taylor, and on the night of the accident, he and Marsee had driven it from their home in Harrodsburg to Danville, where they attended a carnival. On their return, they were accompanied by Ross, who also lived in Harrodsburg. Other young men returning from Danville testified that they discovered appellant and his companions on the roadside near where the accident is said to have occurred; that the automobile was standing on the left hand side of the road, and appellant and his companions were attempting to start it. They stopped and rendered assistance, and after finally succeeding in getting it started, left the scene ahead of appellant and his companions.

There is a conflict in evidence as to statements made by appellant and his codefendants to officers at Harrodsburg, most of which is on the question as to whether the lights on the automobile were burning. Some of the officers testified that appellant and his codefendants stated that they had no lights or that the lights were not burning. There is also evidence that they had a controversy in the presence of officers as to whether the lights were burning. They testified, however, that the lights were burning and that they did not state in the presence of the officers that they were not. Appellant and his companions stated that on their return from Danville, Marsee drove the automobile. On approaching the scene of the accident, they were momentarily blinded by the lights on an automobile which they were meeting; that after meeting the automobile, they had gone about 25 or 30 feet when they struck the man. They all testified that they did not see him until the instant he was struck and that he suddenly appeared in the pathway on the right-hand side of the road. The automobile was a model T Ford, and they stated that the impact so disarranged the floor boards as to prevent the application of the foot or emergency brake, and that they were unable to stop until it had gone about 200 yards, where it came to a stop on an upgrade. They did not go back to make any investigation as to whether the man had been killed or injured, but proceeded on to Harrodsburg, where they repaired their automobile and then decided to return and bring the man in. They found the body crumpled up near a wire fence at the roadside and put it in the automobile intending to take it to Harrodsburg, but were so frightened and in such a state of excitement they decided to place the body on the roadside near a bridge where it would be discovered, and there it was discovered the following morning.

Assuming without deciding that the Sweating Act might be invoked in a case of this character, there is no merit whatever in the contention that evidence as to statements made by appellant and his companions in the presence of officers at Harrodsburg was incompetent because obtained in violation of the statute in question. The statute only applies where the person is in custody charged with a crime and is questioned in an attempt to obtain information concerning his con-

nection with or knowledge thereof after he has been arrested. At most, it is only shown that officers were sent to notify these parties that the county attorney wanted to see and talk with them. They had not been arrested and were not in custody charged with a crime.

Argument that appellant was entitled to a directed verdict because there is no evidence to show negligence shall be considered without regard to evidence of officers as to statements made by appellant or his codefendants about the lights on the automobile.

Appellant testified that the lights were burning and were sufficiently strong for him to see about 150 feet ahead. Taylor testified that they were good and he could see about 200 feet ahead. Some of the young men who stopped to render assistance stated that the lights were burning, but their evidence indicated they were dim and not of sufficient power to reveal objects at any considerable distance. Appellant and his companions all testified they were looking ahead but did not discover the presence of the man until immediately before he was struck, their evidence indicating that he walked into the path of the automobile from the right. The surfaced portion of the highway is 16 feet wide, and there are earth shoulders on either side between that and the ditches, and considerable space between the ditches and fences.

Section 2739g-24, Kentucky Statutes, requires that automobiles operated upon public highways shall be equipped with two lights in front of sufficient power to reveal substantial objects at least 200 feet ahead. So it is made to appear by appellant's own evidence that the lights on the automobile he was driving did not conform to this statutory requirement.

He cannot be excused because immediately before the accident, he was temporarily blinded by the lights of an automobile coming from the opposite direction, since in such circumstances he could not keep a lookout for persons or vehicles ahead. Section 2939g-51, Kentucky Statutes, provides that a motor vehicle shall not be driven at a greater rate of speed than is reasonable or proper having regard for the traffic and use of the highway. Section 2739g-39 provides that motor vehicles proceeding from opposite direction on a straightaway unobstructed highway shall not pass each other at a greater rate of speed than 30 miles per hour. But the

508

latter section does not mean that one may not be negligent even though keeping within that limit. The occupants of the automobile stated that it was going 25 or 30 miles per hour, thus keeping it within the statutory limit, but leaving for the jury a question whether that was a reasonable and proper rate in the proven circumstances. A rate of 30 miles per hour means 44 feet per second, making it obvious that one traveling at such speed will go quite a distance without seeing ahead if blinded for only a very short time.

In the case of Lexington-Hazard Express Co., v. Umberger, 243 Ky. 419, 48 S. W. (2d) 1066, it was held that a motorist blinded by lights in rounding a curve without using precaution to avoid collision with a parked truck was guilty of contributory negligence as a matter of law. In that case, as in this there was no evidence of a slackening of speed or of any other precaution to avoid collision with vehicles or pedestrians.

There is no escape from the conclusion that the verdict is amply supported by the evidence.

While the instructions were silent as to any duty with respect to lights, that made them more favorable to appellant.

Finding no error in the record, the judgment is affirmed.