James V. Allred, Atty. Gen., and J. A. Stanford, Asst. Atty. Gen., for appellees.

## MARTIN v. STATE et al.

### No. 3072.

Court of Civil Appeals of Texas. El Paso.

Oct. 25, 1934.

PELPHREY, Chief Justice.

This is an appeal from an order sustaining appellees' plea of privilege to be sued in Travis county, Tex.

The following findings of fact and conclusions of law were filed by the court, and, while some of them are objected to by appellant, they will serve to show, in a substantial manner, the facts upon which appellant is seeking to recover:

"Findings of Fact.

"1. I find that on and before the 31st day of January A. D. 1933, the State of Texas, acting by and through its State Highway Department, was engaged in the construction of Highway Project Number M–603, generally known and designated as 'Scenic Highway,' in the Davis Mountains, in Jeff Davis County, Texas, and on the date above mentioned, the work then being prosecuted was located approximately fourteen miles in a North-Westerly direction from the Town of Ft. Davis, in said County.

"2. I find that the above described work was being prosecuted for and in behalf of the State of Texas under the general supervision of one, L. B. Marshal, and under the immediate supervision of one, ——— Cook, referred to in the evidence as the 'Straw Boss.'

"3. I find that on the date alleged the plaintiff, Ben Martin, was engaged and continuously since the month of February, 1932, had been engaged on this Highway project, working as a truck driver in the construction of said Road and was being paid at the rate of forty cents per hour.

"4. I find that acting under the direction of the said L. B. Marshall, the employees engaged in the prosecution of this project were required to bring their lunches with them each day and that at twelve o'clock noon each day work was stopped for a period of thirty minutes to permit such employees to partake of said lunch.

"5. I find that as a direct and proximate result of an explosion of dynamite at the scene of the work on this project, the plaintiff, Ben Martin, was struck in the back of the head by a falling rock and suffered grave and severe injuries, and is now still suffering from the results of said injuries, and in all probability is totally and permanently disabled from engaging in the same or similar work during the remainder of his life.

"6. I find that the plaintiff made demand for compensation for these injuries of and from the State Highway Department of Texas, but that payment thereof was denied and refused.

"7. I find that it was customary to explode dynamite on this project during the noon hour, that is to say, just before the time when the employees engaged in the work aforesaid were required to return to work at twelve-thirty P. M., and that warning of the contemplated explosion of such dynamite was customarily given by hollering of those in charge thereof.

"8. I find that on the day of the injury to plaintiff the powder man who would light the fuses in the dynamite to bring about the explosion was doing his work in the manner in which he had always done the same and that he informed plaintiff that an explosion of such dynamite would take place at twelve-thirty.

"9. I find that prior to the time of the explosion the plaintiff had gone away for the purpose of eating lunch from the place where he and others had been working a distance of about two hundred thirty-five feet and a distance of about a hundred yards from the place where the dynamite would be exploded, and that he had been told by the powder man that the explosion of such dynamite would take place at about twelve-thirty P. M.

"10. I further find that the plaintiff knew at the time of the explosion that rocks would be blown thereby a hundred or hundred and fifty yards of where the explosion would take place.

"11. The evidence does not affirmatively establish as a fact that the explosion of the dynamite took place earlier than twelve-thir-

ty P. M., or that it took place at any particular time, and neither does the evidence affirmatively establish that the customary warning was not in fact given.

"12. I find that one, Juan Mendoza, was the powder man employed by the State Highway Department for the purpose of exploding dynamite in the construction work of this Project, and that he did in fact explode the dynamite on the day in question which caused the rocks to be blown in the air and one or more of which struck and caused the injuries complained of by plaintiff.

"Conclusions of Law.

"I conclude as a matter of law, the following:

"1. That pursuant to the provisions of Senate Resolution No. 53, passed at the Regular Session of the 43rd Legislature, the plaintiff was authorized to bring suit against the State of Texas for the injuries alleged in the petition herein in any Court of competent jurisdiction in Jeff Davis County, Texas.

"2. I conclude as a matter of law that the domicile of the State of Texas is Austin, Travis County, Texas, and under the provisions of article 1995, when suit is properly authorized to be brought against the State of Texas, it has the legal right to insist that such suit shall be brought and maintained in the County of its domicile.

"3. I conclude as a matter of law that section 56 of article 3 of the Constitution of Texas prohibits the Legislature from changing the venue in Civil or Criminal cases by any local or special law.

"4. I conclude that as a matter of law that Senate Resolution No. 53, if it has the dignity of a law, can not be other than a special law and therefore insofar as such Resolution sought to fix or establish the venue of this cause in Jeff Davis County, is in violation of said section 56 of article 3 of the Constitution.

"5. I conclude as a matter of law that subdivision 30 of article 1995 of the Revised Statutes of 1925 is not sufficient to authorize the bringing and maintenance of this suit in Jeff Davis County, Texas, as said subdivision No. 30 is applicable alone to suits wherein venue is fixed by general law and can not prevail over section 56 of article 3 of the Constitution when venue is sought to be fixed by special law.

"6. I conclude as a matter of law that if the injury sustained by plaintiff were in fact directly and proximately caused by the negligence of one or more of the other employees

engaged in the work of construction of said Highway Project, such negligence, if any, was passive, through the failure or omission of such employees, and not active or affirmative, such that under subdivision 9 of article 1995 of the Revised Statutes of 1925 a suit could be maintained therefor as a trespass committed in Jeff Davis County, Texas.

"7. Concluding that the plaintiff is without legal authority to maintain this suit in the District Court of Jeff Davis County, Texas, the plea of privilege interposed by The State of Texas is hereby sustained and this cause be and it hereby is ordered transferred to the District Court of Travis County, Texas."

Before appellant filed his suit, he secured the passage of a resolution by the 43d Legislature at its regular session authorizing the filing of the suit against the state of Texas and the state highway commission "in a court of competent jurisdiction, in Jeff Davis County, Texas. * * * Senate Concurrent Resolution No. 53 (Laws 1933, p. 1016)."

Appellee state of Texas duly filed its plea of privilege to be sued in Travis county, Tex. Appellant filed his controverting affidavit in which he alleged the venue to be properly laid in Jeff Davis county, Tex., by virtue of subdivisions 9 and 30 of article 1995, and, further, that appellee, by the adoption of the resolution authorizing the suit to be filed in Jeff Davis county had waived its right to be sued in Travis county.

Appellant's brief contains fourteen assignments of error and six propositions in which the court's action is attacked and appellee counters with eleven propositions in which the contention is made that the seat of government being in Travis county, appellant had the burden of showing that his injuries resulted from a trespass under subdivision 9 of article 1995, or that the venue had been placed in some other county by a valid, general law.

From the above-quoted conclusions of law, it is apparent that the trial court adopted these views. Section 58 of article 3 of our Constitution reads: "The Legislature shall hold its sessions at the City of Austin, which is hereby declared to be the seat of government."

■ Appellee construes this provision to mean that the domicile of the state is at Austin. With such construction, we cannot agree. There is a difference between the government of a state and the state itself (Poindexter v. Greenhow, 114 U. S. 270, 5 S. Ct.

903, 962, 29 L. Ed. page 185; Grunert v. Spalding, 104 Wis. 193, 78 N. W. 606), and, therefore, the fixing of the seat of government for the state is not equivalent to fixing its domicile. The domicile of a person is the place in which he has his fixed habitation, without any present intention of removing therefrom. 15 Tex. Jur., § 2, pp. 708, 709. The powers of the state are coextensive with its physical boundaries, and, as said by the Supreme Court in Wheeler v. State, 8 Tex. 228, "it cannot be said of the State, that she resides in a particular county. * * *"

■ If we be correct in this conclusion, then appellee had no rights under the venue statute and the plea of privilege should have been overruled, however, there is, we think, another reason why the court erred in sustaining the plea of privilege.

■ The resolution authorizing the bringing of the suit provided for its prosecution in a court of competent jurisdiction in Jeff Davis county, Tex. This resolution was later validated by an act of the Legislature. It appears to be the rule that since a state may withhold its consent to be sued entirely, it may impose such conditions and limitations thereon as it may deem desirable (59 C. J., § 461), and that it cannot be sued other than in the courts and places in which it has consented that suit may be maintained against it (59 C. J., § 479).

■ It further appears that consent may be given to sue by special laws and that, when so given, the acts are not violative of constitutional provisions against granting special privilege. See cases cited under note 45 on page 303, 59 C. J.

■ Nor can we agree with the Attorney General in his contention that the resolution here is in conflict with section 56 of article 3 of the Constitution, prohibiting the changing of venue in civil cases by special law.

The framers of the Constitution certainly did not have suits against the state in mind when that provision was placed in our Constitution for the very good reason that no right to sue the state then existed either by virtue of constitutional provision or statute. No venue existed as to such suits and the naming of a court in which suit could be brought in the very act which granted the right to sue could not be said to be a changing of the venue by special law.

After a thorough reading of the briefs of the parties and a study of the authorities, those cited as well as others found by us, we

have reached the conclusion that the trial court erred in sustaining the plea of privilege and in ordering the cause transferred to Travis county. The judgment is reversed and the cause remanded with instructions to the trial court to overrule appellees' plea of privilege.