## Commonwealth et al. v. Daniel.

(Decided Nov. 24, 1936.)

B. M. VINCENT, Attorney General, and GUY H. HERDMAN,. Assistant Attorney General, for appellants.

C. F. PACE for appellee.

OPINION OF THE COURT BY JUDGE REES—Affirming.

At its regular 1934 session, the General Assembly of Kentucky adopted a resolution permitting F. Daniel to sue the Commonwealth of Kentucky and the State Highway Commission to recover damages for any in- juries received by him through the carelessness or neg- ligence of the State Highway Commission, its agents or employees. Chapter 572, Acts 1934.

Daniel was injured when his automobile driven by him ran into the rear end of a truck, which was parked on the right-hand side of the road. The truck was be- ing operated at the time by an employee of the State Highway Commission, and was not equipped with lights, either front or rear. The accident happened shortly after dark October 6, 1932, in Pike county, at a point. about one mile north of the city of Pikeville on the state highway leading from Pikeville to Jenkins, Ky. Daniel was a resident of Johnson county, and the resolution permitted him to sue in the county of his residence, and limited the amount of recovery to $6,000. The action was instituted in the Johnson circuit court, and on the trial before a jury a verdict in favor of the plaintiff for $3,000 was returned, and the Commonwealth and the State Highway Commission have appealed.

It is first insisted that the resolution authorizing the action violates sections 54 and 59 of the Constitu--

tion of Kentucky and is void, and that the trial court, therefore, erred in overruling appellants' special demurrer to the petition. Section 54 of the Constitution reads:

"The general assembly shall have no power to limit the amount to be recovered for injuries resulting in death, or for injuries to person or property."

It is appellants' contention that the resolution limiting the amount of recovery violates this section. Without the enabling act, the appellee had no remedy. Immunity from suit is a privilege which a sovereign may waive or refuse to waive at its pleasure, but, if it waives the privilege, it can do so with such restrictions as it sees fit to impose. The validity of a similar resolution containing a like restriction was upheld in Commonwealth v. Bowman, — Ky. — , — S. W. (2d) —, decided November 10, 1936. It is also contended that the resolution violates subsections 1 and 3 of section 59 of the Constitution, in that it authorizes the plaintiff by special act to change the venue in this character of action. While the resolution is special in the sense that it is for the sole benefit of a certain individual, it is not the kind of local or special legislation prohibited by section 59 of the Constitution; and section 74 of the Civil Code of Practice, which fixes the venue of actions for personal injuries in the county of defendant's residence or the county in which the injury occurs, is not controlling. The venue of actions of this character against the state has never been fixed by a general law, and the fixing of venue in the act which granted the right to sue is not the changing of the venue by special act. Commonwealth v. Bowman, supra; Commonwealth v. Haly, 106 Ky. 716, 51 S. W. 430, 21 Ky. Law Rep. 666; Commonwealth v. Lyon, 72 S. W. 323, 24 Ky. Law Rep. 1747; Martin v. State (Tex. Civ. App.) 75 S. W. (2d) 950; State v. Isbell (Tex. Com. App.) 94 S. W. (2d) 423; 59 C. J. 302-306.

Appellants' claim that the evidence shows appellee was guilty of contributory negligence as a matter of law and that the trial court should have sustained their motion for a peremptory instruction necessitates a brief statement of the facts. The driver of the truck testified that the motor stopped, and he turned the truck to the right and brought it to a stop at the point where the accident happened. The road was paved, and, includ-

ing the shoulders or berms, was 27 feet wide. The concrete surface was 18 feet wide, the shoulder on the right, in the direction in which the truck and appellee's car were traveling, was 2 or 2½ feet wide, and the shoulder on the left was 7 feet wide. The truck was not equipped with lights and was used only during the daytime. The state highway employee in charge of it left Shelby, Ky., late in the afternoon, but in time to reach Pikeville, his destination, before dark. After the motor stopped, he walked to Pikeville, procured a small amount of gasoline, returned to the place where he had parked the truck on the side of the road, and was at work on the motor when he saw the headlights of a car approaching from the rear. He walked to the rear end of the car, waved his hands, and, assuming that the driver of the car had seen him, returned to the front end of the truck and resumed his work. When he observed that the speed of the car had not slackened and that a collision was inevitable, he jumped to the side of the road to avoid injury. The appellee and his son, Robert Daniel, who was with him in the car, both testified that he was driving at a speed of about 25 miles an hour when the car rounded a curve and straightened out in the road between 100 and 200 feet from the parked truck. A car with bright headlights was approaching from the opposite direction, and neither appellee nor his son saw the truck until the car in which they were riding was within 10 or 15 feet of it. Appellee immediately applied the brakes and swerved the car to the left, but the center of the radiator struck the left rear wheel of the truck. The truck was moved forward about 8 feet by the impact, and appellee was thrown against the steering wheel, which was broken. Six or seven ribs were fractured, and he sustained other injuries. The approaching car with the bright headlights was almost opposite the truck when the collision occurred. Appellee and his son testified that the truck had not been parked on the extreme right side of the road, but that all four wheels were on the concrete paving. Appellee admitted that he did not slacken his speed until he saw the truck just before his car crashed into it.

It is earnestly insisted by appellants that appellee wholly failed to exercise any precaution for his own safety; that his injuries resulted from his own negligence in disregarding his duties to slacken his speed and give warning of his approach; and that the motion for a

peremptory instruction to find for the defendants should have been sustained. Norfolk & W. Ry. Co. v. Barney, 262 Ky. 228, 90 S. W. (2d) 14; Downing v. Baucom's Adm'x, 216 Ky. 108, 287 S. W. 362, and other cases are cited, in which it was held that it was the duty of the driver of an automobile, when blinded by the lights of an approaching car, to slacken his speed, give warning of his car's approach, and have it under control. These were cases in which the driver of the car was the defendant, and the court was referring to the care he must exercise to avoid injury to others on the highway. Sounding his horn or giving warning of his car's approach in some other manner would have availed appellee nothing in the present case. In order to avoid the charge of negligence, it was incumbent upon him to observe, however, the duty to slacken the speed of his car if that was necessary to enable him to have it under reasonable control. In Lexington-Hazard Express Co. v. Umberger, 243 Ky. 419, 48 S. W. (2d) 1066, the driver of an automobile, while blinded by the lights of a passing car and unable to see ahead, crashed into a truck parked on the road. He was injured and sued the owner of the truck. It was held that the evidence showed he was guilty of contributory negligence as a matter of law, and that the defendant's motion for a peremptory instruction should have been sustained. As pointed out in the opinion in that case, however, the plaintiff was rounding a sharp curve, and, if the truck had been moving slowly instead of being parked, he would have crashed into it just the same. Furthermore, it did not appear that the lights on the truck required by statute were not operating. In the instant case, it is admitted that the truck was not equipped with lights, either front or rear, and there was evidence that it was parked in the road much further to the left than was necessary. It also appears that the accident did not happen on a sharp curve, but, according to the evidence for appellants, the truck was parked between 100 and 200 feet from the curve, and the evidence for appellee shows that the distance from the curve was more than 200 feet. There was evidence that a red light on the rear of the truck, such as is required by section 2739g-24, Kentucky Statutes, would have been visible to appellee through the light of the car approaching from the opposite direction. There was evidence from which the jury could reasonably infer that the proximate cause of the accident was the failure of the

driver of the truck to observe his statutory duties. The facts distinguish the present case from Lexington-Hazard Express Co. v. Umberger. In Roederer's Adm'x v. Gray, 253 Ky. 669, 69 S. W. (2d) 998, 999, an automobile driven by Gray struck a wagon from the rear and the driver of the wagon was killed. The accident happened in the nighttime, and there was no light of any kind on the wagon. It was held that the driver of the automobile was not guilty of negligence as a matter of law. In the course of the opinion it was said:

"Nothing is more dangerous to a motorist approaching from the rear than an unlighted vehicle. Because of this danger, the statute requires every vehicle used or operated upon any public highway, road, or street, whether it be in operation or stationary, to display at the rear a lighted lamp showing red, visible from the rear 200 feet away. Section 2739g-24, Kentucky Statutes, Baldwin's 1933 Supplement. Clearly a motorist has a right to assume that the operator of every vehicle on the highway has complied with the statute, and, if he looks up the road and sees no red light, to proceed on the assumption that no vehicle is immediately in front of him until it becomes reasonably apparent from his own lights or other means that such is not the case. In view of the evidence that there was no red light at the rear of the wagon, and of further evidence that the lights on the automobile were deflected and the driver did not see the wagon until it was only 10 or 15 feet away, it is at once apparent that the case is one where there may be a reasonable difference of opinion as to the conclusions to be drawn from the facts, and that the driver's negligence was therefore a question for the jury."

Undoubtedly, the driver of the truck was guilty of negligence, and whether or not the negligence of the appellee was such as to preclude his right to recover was a question for the jury.

The court gave a general instruction on contributory negligence, and also a concrete instruction in which the duties of appellee, as the driver of the automobile under the conditions disclosed by the evidence, were set out. Complaint is made of this instruction, but it is substantially the same as an instruction on contributory negligence offered by appellants, and, when the instruc-

tions are read as a whole, we think they presented the issues involved with sufficient clarity to enable the jury to reach a just verdict.

The judgment is affirmed.