## McLellan v. Threlkeld.

March 24, 1939.

As Modified on Denial of Rehearing June 16, 1939.

Robert H. Coleman, Judge.

John B. Rodes and Rodes & Willock for appellant.

Attkisson & Attkisson and Laurence B. Finn for appellee.

OPINION OF THE COURT BY JUDGE RATLIFF—Reversing.

Appellant has prosecuted this appeal from a judgment rendered against him in the Warren circuit court in favor of appellee for $1,500 for personal injuries sustained by appellee resulting from a collision between his automobile and a truck belonging to appellant.

The grounds relied on for a reversal are (a) that the court erred in overruling appellant's motion for a peremptory instruction directing a verdict in favor of appellant at the close of the evidence; (b) the instructions are erroneous; and (c) the court admitted incompetent evidence in favor of appellee. We will discuss these points in the order named.

The accident happened on December 8, 1936, at about five o'clock P. M., Central Standard Time, about twelve miles from Bowling Green, Kentucky. George McLellan, a son of appellant, who was driving the truck, parked it on the side of the road with the right wheels off the metal of main-traveled portion of the highway and the left wheels about three feet on the metal. Appellee was traveling in the same direction and his car struck the rear-end of the truck. It is reasonably well established by the evidence that it was dark and it is admitted that the truck had no lights and particularly no rear light at the time. The driver of the truck does not admit that it was dark at the time but he said it was "getting dark" and he saw that it would be dark before he got to Bowling Green and he parked the truck for the purpose of going to a nearby residence to telephone to his father in regard to having no lights on the truck.

The road at the place where the accident occurred is straight for several hundred feet, but appellee claims that because his vision was obscured by the headlights of cars approaching from the opposite direction and that the truck had no lights he did not see it until he was within about sixty feet of it, but it appears that he was more or less indefinite as to the distance. He was asked what speed he was traveling when he saw the truck and he said he was going between thirty-five and forty miles an hour and as soon as he saw the truck he applied the foot brakes. He admitted he did not slow or slacken his speed when passing the cars approaching from the opposite direction. He was asked how far he ran after he saw the truck and before he struck it, and he answered, "I am not prepared to say, but I don't think I ran over sixty feet." He said that two or three cars approaching from the opposite direction passed him and as soon as the last car passed he saw the truck, and he was again asked how far he was from the truck when he passed the last car, and he again said, "Approximately sixty feet." Appellee said his front lights were sufficient to

reveal substantial objects in the road 200 feet ahead of him and his brakes were in good condition. He was asked why he did not see the truck, and he said, "Because there were other cars coming on, and their lights nullified mine." However, later in his testimony he said that if the truck had had a red light (meaning a rear light) he could have seen it even though his vision was obscured by the headlights of the approaching cars.

The last car that passed appellee before he struck the truck was being driven by Julian Bohannon, who was called as a witness for the appellee. Bohannon stated that he passed the truck parked on the side of the road and he met or passed appellee about eighty to ninety feet beyond the truck and after he passed he heard the collision. But after estimating the distance as being eighty to ninety feet, he was examined in reference to certain objects and physical facts. He said that appellee passed him at a place referred to as the "Calloway Fence" and that that fence was about 200 feet from where he passed the truck, and soon after appellee passed his car, he, appellee, put on the brakes. Bohannon said he went back to the scene of the accident the next morning and inspected the ground and saw skid marks on the road running north from where the truck was standing. He did not measure the distance of the skid marks but said that Mr. Calloway "stepped" them, but he estimated the distance to be ninety to a hundred feet from where the truck was parked. Mr. Calloway testified that the place of the accident where the truck was parked was between a hundred and fifty and two hundred feet from his south fence. Mr. Calloway further testified that he inspected the ground or road and stepped the distance from where the skid marks began to where the truck was parked and it was thirty steps, and another witness testified that it was from thirty to thirty-five steps.

Appellee did not testify in regard to the skid marks and his only evidence in reference to the distance he was from the truck when he saw it is that it was about sixty feet. It is seen from the uncontradicted evidence of the other witnesses that appellee passed the Bohannon car at about the south fence of the Calloway premises, which point was one hundred and fifty to two hundred feet from the truck, and also the skid marks show that appellee's car had skidded approximately ninety feet, and appellee says if he had not struck the truck his car

would have skidded a car length or ten or twelve feet farther, and with this distance added he would have skidded approximately one hundred feet after he applied his brakes.

Appellant insists that the foregoing evidence establishes that appellee was guilty of contributory negligence as a matter of law and the court should have sustained his motion for a directed verdict in his favor. To support his position appellant relies upon Section 2739g-39 of the Kentucky Statutes, which provides that vehicles proceeding from the opposite direction shall pass each other to the right, each giving to the other one-half of the road as nearly as possible; and neither proceeding when on a straightaway unobstructed highway, at a greater rate of speed than thirty miles per hour. As we have already stated, appellee admitted that he was operating his car at a speed of thirty-five or forty miles an hour and did not slow or slacken his speed when passing other vehicles approaching from the opposite directions or at any time until he saw the truck. It is earnestly insisted for appellant that had appellee been operating his car at the statutory speed of thirty miles an hour when passing the approaching cars, he could have stopped his car within less than sixty feet, the distance he places himself from the truck when he first saw it.

A number of witnesses testified that the kind of car (two-door Buick sedan) appellee was driving and with brakes in good condition, as he says they were, it should have been stopped within twenty-five to thirty-five feet. Even one of appellee's own witnesses testified that his car should have been stopped within forty-seven feet; and one witness for appellee testified that at a speed of forty miles per hour the car should have been stopped within less than eighty feet.

In addition to the statutes, supra, appellant cites and relies upon numerous decisions of this court wherein similar questions were involved, viz; Lexington-Hazard Express Company v. Umberger, 243 Ky. 419, 48 S. W. (2d) 1066; Marsee v. Hunt's Adm'x, 246 Ky. 503, 55 S. W. (2d) 376; Downing v. Baucom's Adm'x, 216 Ky. 108, 287 S. W. 362, and City of Providence v. Young, 227 Ky. 690, 13 S. W. (2d) 1022.

In the last cited case, Young ran his car into a concrete mixer in a street and it was held that he was not

guilty of contributory negligence as a matter of law because the city is required to exercise ordinary care to keep streets in a reasonably safe condition for public travel and a traveler may assume that the city has performed its duty of exercising ordinary care to keep the street in reasonably safe condition for public travel, and that no danger will be encountered in proceeding, even though existing, but vanishing conditions may prevent a present view ahead, in the absence of notice or knowledge to the contrary.

In the Downing case, supra, Downing met two cars approaching from opposite directions and said he was blinded by the lights of them and did not see Baucom until it was too late to avert accident. It was held that under such conditions Downing should have slackened his speed, given warning of his car's approach and had it under control, citing Section 2739g-47, Kentucky Statutes, and a number of opinions of this court.

In the Marsee case, supra, Marsee claimed that he was looking ahead but did not discover the presence of Hunt, whom he struck and killed with his car, until immediately before he was struck, because he was temporarily blinded by the lights of an automobile coming from the opposite direction, since in such circumstances he could not keep a lookout for persons or vehicles ahead. We held that he could not be excused on that ground because Section 2739g-51, Kentucky Statutes, provides that a motor vehicle shall not be driven at a greater rate of speed than is reasonable or proper, having regard for the traffic and the use of the highway; and Section 2739g-39 provides that motor vehicles proceeding from the opposite direction on a straightaway unobstructed highway shall not pass each other at a greater rate of speed than thirty miles per hour, but that the latter section does not mean that one may not be negligent even though keeping within that limit. It is pointed out in that opinion that at a rate of thirty miles per hour means 44 feet per second, making it obvious that one traveling at such speed will go quite a distance without seeing ahead if blinded for only a very short time. The court cited the case of Lexington-Hazard Express Company v. Umberger, supra, wherein it was held that a motorist blinded by lights in rounding a curve without using precaution to avoid collision with a parked truck was guilty of contributory negligence as a matter of law.

While the facts in the cases supra and the present case are substantially the same in many respects, yet a close analysis readily reveal their distinguishability.

In Commonwealth v. Daniel, 266 Ky. 285, 98 S. W. (2d) 897, the facts are more in line with the facts in the present case than the cases supra, relied on by appellant. The facts in the Daniel case are set out in the opinion and reference to it is sufficient without repeating them here. In that case it was argued as is here argued in the present case, that Daniel's injuries resulted from his own negligence in disregarding his duties to slacken his speed and give warning of his approach and have his car under control when blinded by the lights of a car approaching from the opposite direction, etc., and that the court should have sustained the Commonwealth's motion for a directed verdict in its favor, and relied on the cases of Norfolk & W. Railway Company v. Barney, 262 Ky. 228, 90 S. W. (2d) 14, Downing v. Baucom's Adm'x, and Lexington-Hazard Express Company v. Umberger, supra. In distinguishing those cases, we said [266 Ky. 285, 98 S. W. (2d) 899]:

"It is earnestly insisted by appellants that appellee wholly failed to exercise any precaution for his own safety; that his injuries resulted from his own negligence in disregarding his duties to slacken his speed and give warning of his approach; and that the motion for a peremptory instruction to find for the defendants should have been sustained. Norfolk & W. Railway Company v. Barney, 262 Ky. 228, 90 S. W. (2d) 14; Downing v. Baucom's Adm'x, 216 Ky. 108, 287 S. W. 362, and other cases are cited, in which it was held that it was the duty of the driver of an automobile, when blinded by the lights of an approaching car, to slacken his speed, give warning of his car's approach, and have it under control. These were cases in which the driver of the car was the defendant, and the court was referring to the care he must exercise to avoid injury to others on the highway. Sounding his horn or giving warning of his car's approach in some other manner would have availed appellee nothing in the present case. In order to avoid the charge of negligence, it was incumbent upon him to observe, however, the duty to slacken the speed of his car if that was necessary to enable him to have it under

reasonable control. In Lexington-Hazard Express Company v. Umberger, 243 Ky. 419, 48 S. W. (2d) 1066, the driver of an automobile, while blinded by the lights of a passing car and unable to see ahead, crashed into a truck parked on the road. He was injured and sued the owner of the truck. It was held that the evidence showed he was guilty of contributory negligence as a matter of law, and that the defendant's motion for a peremptory instruction should have been sustained. As pointed out in the opinion in that case, however, the plaintiff was rounding a sharp curve, and, if the truck had been moving slowly instead of being parked, he would have crashed into it just the same. Furthermore, it did not appear that the lights on the truck required by statute were not operating. In the instant case, it is admitted that the truck was not equipped with lights, either front or rear, and there was evidence that it was parked in the road much further to the left than was necessary. It also appears that the accident did not happen on a sharp curve, but, according to the evidence for appellants, the truck was parked between 100 and 200 feet from the curve, and the evidence for appellee shows that the distance from the curve was more than 200 feet. There was evidence that a red light on the rear of the truck, such as is required by Section 2739g-24, Kentucky Statutes, would have been visible to appellee through the light of the car approaching from the opposite direction. There was evidence from which the jury could reasonably infer that the proximate cause of the accident was the failure of the driver of the truck to observe his statutory duties. The facts distinguish the present case from Lexington-Hazard Express Coompany v. Umberger. In Roederer's Adm'x v. Gray, 253 Ky. 669, 69 S. W. (2d) 998, 999, an automobile driven by Gray struck a wagon from the rear and the driver of the wagon was killed. The accident happened in the nighttime, and there was no light of any kind on the wagon. It was held that the driver of the automobile was not guilty of negligence as a matter of law. In the course of the opinion it was said:

" 'Nothing is more dangerous to a motorist approaching from the rear than an unlighted vehicle. Because of this danger, the statute requires

every vehicle used or operated upon any public highway, road, or street, whether it be in operation or stationary, to display at the rear a lighted lamp showing red, visible from the rear 200 feet away. Section 2739g-24, Kentucky Statutes, Baldwin's 1933 Supplement. Clearly a motorist has a right to assume that the operator of every vehicle on the highway has complied with the statute, and, if he looks up the road and sees no red light, to proceed on the assumption that no vehicle is immediately in front of him until it becomes reasonably apparent from his own lights or other means that such is not the case. In view of the evidence that there was no red light at the rear of the wagon, and of further evidence that the lights on the automobile were deflected and the driver did not see the wagon until it was only 10 or 15 feet away, it is at once apparent that the case is one where there may be a reasonable difference of opinion as to the conclusions to be drawn from the facts, and that the driver's negligence was therefore a question for the jury.'

"Undoubtedly, the driver of the truck was guilty of negligence, and whether or not the negligence of the appellee was such as to preclude his right to recover was a question for the jury."

In the present case no curve is involved and the preponderance of the evidence tends to show that appellee was approximately 100 feet from the parked truck when he passed the last car coming from the opposite direction, and he testified, as did Daniel in the case supra, that although his vision was obscured by the lights of the approaching cars, yet if the truck had had a rear light it would have revealed its presence in time to have avoided the collision. There is no escape from the conclusion, and it is hardly denied, that the driver of the truck was guilty of negligence and, if it be conceded that appellee did not observe the care for his own protection as an ordinarily prudent person might or should have done under the same or similar circumstances, yet we think that the evidence is sufficient to present an issue for the jury as to whether or not the negligence of appellee, if he were negligent, was such that the accident would not have occurred but for his own negligence. It follows that the court properly overruled appellant's motion for a directed verdict.

It is next insisted that the instructions given to the jury are erroneous. In Instruction No. 1 the court instructed the jury that it was the duty of the defendant at the time and place referred to in the evidence to exercise ordinary care *"so as to operate, manage and use"* the said truck referred to in the evidence, *"as not to cause it to come in"* collision with other persons or vehicles using the highway, etc. It is insisted that the language we have quoted is a requirement of absolute liability if a collision occurred. However, this language being preceded by the phrase "to exercise ordinary care," it is doubtful that the jury would have been misled or confused because of the alleged objectionable language. However, lest it should be misleading or confusing we think the instruction should read, "to exercise ordinary care in operating the said truck referred to in the evidence to avoid a collision, etc."

Another objection urged to Instruction No. 1 is that it told the jury that if the defendants or either of them violated any one or more of the duties enunciated, and that such violation, if any, *contributed to cause or bring about* the collision of said truck with the plaintiff's automobile and that as a direct and proximate result thereof the plaintiff was injured thereby, then the law of the case is for the plaintiff, etc. It is insisted that the language "contributed to cause or bring about," authorized the jury to find for the plaintiff, although it should believe that the plaintiff himself was contributorily negligent but for which the accident would not have occurred. We think the objection is well taken. The court should have instructed the jury that if the violation of the duties, if any, was the direct and proximate cause of the collision, they would find for the plaintiff.

We have held time and again that the negligence causing the injury complained of, must have been the proximate cause of injury to another. Blue Grass Coal Corporation v. Combs, 205 Ky. 761, 765, 266 S. W. 642; Wright v. L. C. Powers & Sons, 238 Ky. 572, 38 S. W. (2d) 465, and cases cited. Sabiston's Adm'r v. Otis Elevator Company, 251 Ky. 222, 64 S. W. (2d) 588; Stacey v. Stoner, 260 Ky. 848, 86 S. W. (2d) 1006; Stevens' Adm'r v. Watt, 266 Ky. 608, 99 S. W. (2d) 753.

It is also insisted that the language "that as direct and proximate result thereof the plaintiff was injured" etc., referred to the collision and authorized the jury

to find for plaintiff if he believed that his injury resulted from the *collision* rather than from the *negligence* of the defendant. We doubt that the language used is susceptible of such criticism. The instruction as framed may be somewhat inapt, yet, no doubt, the jury understood that to find for the plaintiff they must believe from the evidence that plaintiff's injury resulted not only from the collision but also that the collision must be the proximate result of defendant's negligence.

It it also insisted that the court erroneously refused instruction "C" offered by appellant, in substance that, if the jury believe from the evidence that the purpose of stopping the truck at the time and place of the collision was for the persons traveling therein, one or both of them, to get out in order to reach a nearby telephone, the driver of such truck had the right to do so if he used ordinary care before reaching a stop, to drive said vehicle to the extreme right-hand side of the main-traveled portion of the public highway. This offered instruction is based upon Section 2739g-48, Kentucky Statutes, prohibiting the stopping of motor vehicles on the main traveled portion of the highway "except for the purpose of receiving or discharging a passenger." According to the evidence of the driver of the truck he stopped it for the purpose of going to a telephone to inform his father that it was dark or would be dark before he got to Bowling Green and that he had no lights on the truck. We do not think that under the circumstances the purpose for which the driver stopped the truck on the highway, brings it within the purview of the statute, supra, so as to classify the driver as a "passenger" in the meaning of the statute. We do not think the court erred in refusing that instruction.

Instruction No. 3 is also complained of as being erroneous. That instruction told the jury that if they find for the plaintiff under the instructions "heretofore given" then they shall award the plaintiff such a sum in damages as they may believe from the evidence will reasonably and fairly compensate him for any mental and physical pain and suffering, if any, which he has heretofore endured or which he may reasonably endure in the future and "for such permanent impairment, if any, of his power to earn money" as they may find from the evidence he has incurred not to exceed the sum of $25,000 the amount stated in the petition; and also authorized the jury to find for the plain-

tiff such sum as will reasonably and fairly represent the sums expended by him for hospital bills, nurse hire, doctor bills, and certain other items of expense incurred in the treatment of his injury, not to exceed the sum of $943.15, the amount claimed in the petition.

One objection urged to the instruction is that it failed to require the sums so found mentioned in the first part of the instruction to be the proximate result of any negligence on the part of appellant, nor did it require the hospital bills and other expenses mentioned in the last part of the instruction to have been reasonable and necessarily incurred by reason of the injury suffered in the collision.

The instruction is prefaced with the language, "If the jury find for the plaintiff under the instructions heretofore given * * *." The instruction theretofore given dealt with the injury sustained by appellee as result of the negligence of defendant and the collision. We do not think the jury could have been misled or confused because the instruction did not specifically state or repeat that the sums found in the first part of the instruction should be a direct and proximate result of the collision; nor is it reasonable to believe that the jury would have found hospital bills and other expenses in favor of plaintiff except for the treatment of the injury sustained by reason of the collision. No other injuries were in evidence. However, for accuracy it might be well to instruct the jury, upon another trial of the case, if one is had, that if they find for plaintiff the sums set out in the instruction, in either or both paragraphs thereof, they will limit their findings set out in the first part of the instruction to the proximate cause of the negligence of defendant and the collision, and also limit their findings for expenses, etc., set out in the last part of the instruction, to the sums reasonably and necessarily incurred in the treatment of plaintiff's injury directly and proximately resulting from the collision. That instruction (No. 3) also authorized the jury to find for the plaintiff a sum which reasonably and fairly represents loss of time for three months not to exceed $400 per month or a total of not more than $1,200, in addition to his loss of power to earn money.

The instruction as a whole authorized the jury to find for plaintiff both for permanent impairment of his power to earn money and for the loss of time for the

same period, to the extent of the lost time, thereby authorizing a duplication for the period of lost time. This was error. The recovery for loss of power to earn money begins when the loss of time ends. Kentucky Power Company v. Kurtz, 236 Ky. 169, 32 S. W. (2d) 991. Upon another trial of the case, if a similar instruction be given, it should be so framed as to avoid the duplication we have indicated.

The court also gave Instruction "A" offered by appellant which dealt with the duties of appellee in the operation of his automobile, enumerating certain duties required of him by the Statute, and embodied therein the usual contributory negligence instruction. No complaint is made by appellant of this instruction.

Lastly, it is argued that the court admitted incompetent evidence which was prejudicial to appellant. The evidence complained of was a telegram from Washington, D. C., signed in type "Naval Observatory" stating that the sun set on December 8th, the day of the accident, at 4:29 P. M. It is not shown who signed the telegram or by what authority. We do not think the telegram was properly authenticated so as to be admissible as evidence. However, be this as it may, we do not think it could have been prejudicial.

Section 2739g-23 of the Kentucky Statutes requires every motor vehicle when operated upon a public highway to be equipped with lights which shall be displayed during the period from one-half hour after sunset to one-half hour before sunrise, "and at such other times as atmospheric conditions render visibility as low as or lower than is ordinarily the case during said period, and that provisions as to distances mean under ordinary atmospheric conditions."

The great weight of the evidence tends to show that it was actually dark at the time of the collision, and the driver of the truck admits that it was "getting dark." It is also shown that all other vehicles on the highway had their lights on. All the evidence tends to show that it was dark or practically dark and the atmospheric conditions were such as to require motor vehicles to have their lights on. Because of the errors in the instructions as we have indicated, the judgment is reversed and remanded for proceedings consistent with this opinion.

Whole court sitting.