# Central Trust Co. of Owensboro v. Moffitt et al.

April 27, 1943.

Cary, Miller & Kirk and Robert Todd Sweeney for appellant.

Thomas E. Sandidge for appellees.

OPINION OF THE COURT BY JUDGE RATLIFF—Affirming.

Appellees, who were the plaintiffs below, brought this action in the Daviess circuit court against appellant seeking a judgment of the court quieting their title to a parcel of land in the city of Owensboro, Kentucky, fronting the south side of Third Street approximately three feet and extending a straight line south 125 feet and lying between the east line of appellees' theater property and the west property line of appellant's lot. They alleged that they were the owners of said parcel of land by deed and that appellant (defendant) was committing various acts of trespass upon their said land and had erected a fence and signboard thereon, and asked that they be quieted in their title and that appellant be enjoined from trespassing upon their land and be required to remove therefrom the said fence and signboard. The answer of appellant consisted of a traverse only and the sole issue made was appellees' ownership of the land. The facts out of which the controversy arose are, in substance, these:

In 1847 Robert C. Wickliffe conveyed lot No. 65 in the town of Owensboro to the trustees of the "Owensboro Presbyterian Church Old School." The lot is bound by Third Street on the north, lot No. 66 on the east, Fourth Street on the south, and St. Ann Street on the west, and comprises one-fourth of a city block or square. The Presbyterian Church erected a church building on the northeastern corner of the lot, leaving a private alley approximately ten feet wide between the eastern wall of the building and the east line of lot No. 65, or west line of lot No. 66. Near the close of the Civil War the church congregation became divided as a result of the war, one faction being in sympathy with the Union and designated as the "General Assembly of the Presbyterian Church of the United States, North," and the other faction connecting itself with the "General Assembly of the Presbyterian Church of the United States, South," and as a result of this division of the church congregation, lot No. 65 was divided in the year 1869 by a deed of partition between the two congregations. That portion of the lot deeded to the northern branch of the church was described in the deed as commencing at the northwest corner of half acre lot No. 66 on Third Street (which is the northeastern corner of lot 65), thence running west with the south side or boundary line of Third Street 57 feet; thence south 125 feet; thence east 57 feet to the line of

lot No. 66, and thence north with the line of said lot 125 feet to the beginning, "and all the remainder of said half acre lot number sixty five is allotted to Presbyterian Church Old School in connection with the General Assembly of the Presbyterian Church of the United States, South." That portion of the lot deeded to the northern branch of the church included the building which had been erected thereon, and the 57-foot frontage on Third Street extended approximately five feet west of the west wall of the building, thus leaving an open space between the building and the west property line.

On the original plat of the city of Owensboro, lot No. 65 is shown to front 132 feet on Third Street, and calculated on that basis the 57-foot frontage deeded to the northern branch of the church left a 75-foot frontage deeded to the southern branch of the church. In September, 1870, the trustees of the southern branch of the church conveyed to Bernard Hagmann a lot located in the northwest corner of lot No. 65 and described as 25 feet (frontage) on Third Street beginning at the intersection of Third and St. Ann Streets and running west 25 feet on Third Street. Assuming that the southern branch of the church owned only a 75-foot frontage on Third Street, after the conveyance of the 25 feet above referred to, left the southern branch of the church only 50 feet fronting Third Street between the east line of the 25-foot lot and the west line of the northern branch of the church. In March, 1872, the trustees of the southern branch of the church conveyed to R. H. Taylor and W. N. Sweeney the remaining portion of lot No. 65 after conveying the 25-foot lot to Hagmann and this remaining portion of the lot was described as fronting 50 feet on Third Street and 125 feet back (south), running with the eastern lines of the lot sold to Hagmann and thence east to the line of the northern branch of the church, "the said 50 feet by 125 feet being all of said lot No. 65 now held by the parties aforesaid in trust for the congregation aforesaid" (south).

We think it obvious from the language of the above description that it was the intention of the trustees (grantors) to convey all the remaining portion of the property they then owned fronting Third Street lying between the east line of the lot conveyed to Hagmann and the west line of the 57-foot lot conveyed by the deed of partition to the northern branch of the church, regardless

of the exact number of frontage feet on Third Street. It is to be noticed that the description calls for the property line of the northern branch of the church and specifically states that it is *all* of the property then owned by the trustees of the southern branch of the church. It is apparent that the 50-foot frontage was mentioned in the description because it was then thought that lot No. 65 in its entirety had a frontage of only 132 feet on Third Street.

A store building was constructed on the lot conveyed to Hagmann (the 25-foot lot), and Taylor and Sweeney later constructed a building on their lot located between the Hagmann property and the old church property retained by the northern branch of the church and the east wall of the building constructed by Taylor and Sweeney was located 50 feet east of the Hagmann property two and one-half feet west of the property line of the northern branch of the church; i. e., the 57-foot limit conveyed to that branch of the church in the original partition deed. This two and one-half feet plus the five-foot space extending west of the church building, as heretofore pointed out, left an open space of approximately nine feet between the west wall of the church building and the east wall of the building constructed on the Taylor and Sweeney lot and extending the entire depth of the lots, or 125 feet south from Third Street. The Taylor and Sweeney building was originally used and known as the ''Market House'' but it was subsequently converted into a theater with exit doors opening in the alleyway, or the nine-foot open space referred to above, and that condition still exists. In August, 1881, Taylor and Sweeney conveyed to Charles Megill 14 feet (fronting Third Street) of their lot including that portion of the building thereon which adjoined the Hagmann property. Later the remaining portion of the property owned by Taylor and Sweeney located between the east line of the 14-foot lot conveyed to Megill and the west line of the old church property retained by the northern branch of the church, was by mesne conveyances acquired by the appellees. It may be noted that in these mesne conveyances the number of feet frontage called for on Third Street correspond with the frontage called for in the Taylor and Sweeney deed but also refers to the property line of the northern branch of the church.

The northern branch of the church continued to use

its property for church purposes until 1890 and in June of that year the trustees of that branch of the church conveyed the church property to Robert Brodie and others. In the meantime, however, and after the southern branch of the church had conveyed the 75-foot frontage of its part of the property by the various deeds mentioned above, it had been ascertained by actual measurement that lot No. 65 fronted Third Street 134 feet and 11 inches instead of 132 feet as stated in the original plat. Since the trustees of the southern branch of the church had sold only a 75-foot frontage on Third Street, apparently the trustees of the northern branch of the church assumed that they owned all the property east of the 75-foot limit theretofore conveyed by the trustees of the southern branch of the church, and in their deed to Brodie the frontage on Third Street called for 59 feet and 11 inches. By mesne conveyances, in the year 1909 the United States National Bank acquired the property conveyed to Brodie and all these deeds of conveyances, including the one to the United States National Bank, purported to convey 59 feet and 11 inches frontage on Third Street. The United States National Bank held the property until 1921 when it conveyed the same to the appellant, and appellant's deed likewise calls for 59 feet and 11 inches frontage on Third Street. Appellant contends that since it and its predecessors in title have claimed and had possession of the property conveyed to Brodie in 1890 it has acquired title by adverse possession to the entire lot including the 2 feet and 11 inches in dispute.

It is obvious that the northern branch of the church took title to only a 57-foot frontage on Third Street under the partition deed and the southern branch of the church took title to the remainder, or 77 feet and 11 inches rather than 75 feet. The fact that the trustees of the southern branch of the church sold only a 75-foot frontage did not deprive it of its title to the remaining 2 feet and 11 inches, nor did that fact invest the northern branch of the church with title to the same. Since the northern branch of the church had title to only a 57-foot frontage on Third Street it could not and did not convey any title to Brodie and others to any more than it owned, nor did Brodie's successors in title convey any more than they owned. It follows, therefore, that appellant never acquired any paper title to more than a 57-foot frontage on Third Street, and hence the question involved turns

upon whether or not appellant acquired title to the 2 feet and 11 inches in dispute by adverse possession.

In taking the evidence appellant sought to show that it and its predecessors in title as far back as the Brodie deed in 1890 had claimed and had actual possession of the entire lot conveyed to Brodie consisting of 59 feet and 11 inches on Third Street, or to the east wall of appellees' building, which included the 2 feet and 11 inches in dispute. After the chancellor had announced judgment in favor of appellees adjudging them to be the owners of the 2 feet and 11 inches in dispute but before the judgment was actually entered, appellant tendered and offered to file its amended answer and counterclaim asserting title to the property in dispute by adverse possession, to the filing of which amended pleading appellees objected and the chancellor sustained the objections and refused to permit the pleading to be filed, to which ruling of the court appellant excepted. It is insisted that this amended pleading was for the purpose of conforming to the evidence which, appellant insists, showed that it had acquired title to the property in dispute by adverse possession. It is elementary that it is largely within the discretion of the trial court to permit amended pleadings to be filed and this court will not interfere with the ruling of the trial court on such question unless it clearly appears that the trial court exercised an abuse of discretion. We are not advised by the record as to what ground the chancellor refused the amended pleading, whether on the ground that in the circumstances the amendment was offered too late and, therefore, might be prejudicial to the rights of appellees, or whether the chancellor thought the proof insufficient to show title in appellant by adverse possession. We are not prepared to say that the chancellor committed error in refusing the amended pleading, particularly upon the question of the sufficiency of the evidence to support the plea of adverse possession.

Appellant stresses the fact that one of the appellees' predecessors in title testified that he never claimed any frontage on Third Street east of the east wall of his building, (now owned by appellees). But, it must not be overlooked that by his deed he was actually vested with title to the west line of the northern branch of the church and his failure to claim the 2 feet and 11 inches between the east wall of his building and the line of the

northern branch of the church was due to the fact that he did not know the exact location of his east line. But as we have heretofore pointed out, ignorance of the exact location of his line did not deprive him of title with which he was really invested under his deed. It also appears in the evidence that before appellant purchased its property and before appellees purchased their property, one of appellees' predecessors in title constructed a chimney in connection with the theater building and secured permission of the United States National Bank, the then owner of the property, to construct the chimney which was constructed east of the wall of the theater building. It is further shown that appellees leased the theater property and operated the theater under the lease previous to their purchase of the property and in the lease reference was made to the chimney and it was recited therein that it was constructed on the property of the United States National Bank. It is insisted that this was a recognition by appellees and their predecessors in title that the United States National Bank was the then owner of the ground on which the chimney was constructed. It must not be overlooked, however, that at that time appellees' predecessors in title were acting under the erroneous belief that lot No. 65 fronted Third Street only 132 feet. Ignorance of the exact boundary line of property will not deprive the owner of his title thereto, unless the opposing claimant has actually acquired title thereto by adverse possession. After appellees had operated the theater under a lease for a certain period of time they then purchased of their lessor all the lot or property their lessor then owned which, of course, extended to the western line of the northern branch of the church and likewise the western line of the United States National Bank. Appellee Lee Moffitt testified that the 2 feet and 11 inches of ground lying east of the wall of the theater building was never in dispute between him and appellant and was not discussed or considered in dealing with the leased premises. It is further shown in the evidence that while the United States National Bank owned the property it constructed a fence extending from the bank building to the east wall of the theater building at the northern end of the alley, but there was a gateway left in the fence and the president of the bank testified that "We had a little fence with a little gate in the center to keep stragglers and boys from going back in the bank building. We maintained that I think practically

all the time.'' We do not think this evidence is sufficient to show an act of adverse possession on the part of the bank. Without further detailing the evidence it is sufficient to say that it is our view that the preponderance of the evidence tends to show that the respective owners of the property adjoining the east and west side of the alley each had access to the alley and the use made of it by them was mutual. We do not think the evidence sufficient to show that the use made of the alley including the 2 feet and 11 inches in dispute was such as would vest either party with title thereto by adverse possession. We are unable to say that the judgment of the chancellor is contrary to the preponderance of the evidence relating to the question of adverse possession.

Wherefore, the judgment is affirmed.