## Croley v. Huddleston.

May 23, 1947.

J. B. Johnson, Judge.

812

E. L. Stephens, Glenn H. Stephens and R. L. Brown for appellant.

C. B. Upton and R. L. Pope for appellee.

OPINION OF THE COURT BY JUDGE SIMS—Affirming.

This is the second appeal of this case, the first opinion being reported in 301 Ky. 580, 192 S. W. 2d 717. The facts relative to the accident are there stated, therefore it is unnecessary to reiterate them. The first judgment was reversed because of erroneous instructions, but the former opinion points out that the evidence was sufficient to establish appellant's negligence and to support the verdict.

Appellant seeks to reverse the judgment upon three grounds: (1) the court erred in permitting an amended petition to be filed on the morning of the second trial; (2) it was prejudicial error to permit certain testimony taken on the first trial to be read upon the second trial; (3) the verdict is excessive.

The accident in which appellee was injured occurred some 20 months before the second trial and the only material allegations contained in the amended petition filed on the morning of the second trial were those which increased the amount of damages he sought to recover from $550 to $2,567 for time lost from work. This in no manner changed the issue and appellant might reasonably have anticipated that appellee would amend his petition to bring his loss of time up to the date of the trial. Section 134 of the Civil Code of Practice provides that the trial court may at any time in the furtherance of justice, and upon such terms as may be proper, permit amended pleadings to be filed. Under this section of the Civil Code of Practice the court is given a broad discretion in allowing amendments to be filed and that discretion will not be disturbed on appeal unless it is apparent that it has been abused. Central Trust Co. of Owensboro v. Moffitt, 294 Ky. 103, 171 S. W. 2d 21; Crittenden County v. Towery, 264 Ky. 606, 95 S. W. 2d 233.

Nor do we think the court erred in permitting to be read on the second trial the testimony of a dentist, Dr.

Richardson, which was given and reported on the first trial. In civil cases it is within the discretion of the court to permit officially reported testimony on the former trial to be read on a second trial of the same issue between the same parties, KRS 422.150, where the testimony of such witness cannot be procured.

Here, the record shows by the testimony of appellee that he was appointed special bailiff to and did serve a subpoena on Dr. Richardson on June 8th to appear in court on June 11th to testify in his behalf; that the Doctor was in court on the first day of the trial and promised appellee to return to court the next day, but he failed to do so; that appellee had the sheriff and several other people looking for the Doctor the second day of the trial but he could not be found, and the court permitted his testimony reported on the former trial to be read. Appellee had taken the necessary steps to procure Dr. Richardson's attendance by serving a subpoena on him. More than that, he had personally seen the Doctor the day before he was to be called as a witness and the Doctor had assured him that he would be in court the next day. Therefore, it was no abuse of discretion for the trial judge to permit Dr. Richardson's testimony reported on the first trial to be read on the second one. Louisville & N. R. Co. v. Galloway, 219 Ky. 595, 294 S. W. 135.

It is urged by appellant that sec. 667 of the Civil Code of Practice makes void the service of the subpoena upon Dr. Richardson by appellee acting as a special bailiff, since this section prevents an officer from serving a process in an action in which he is a party; and as the witness was not duly subpoenaed, it was an abuse of discretion upon the part of the court to permit his testimony to be read. He cites Knott v. Jarboe, 58 Ky. 504 and Stewart v. Com., 209 Ky. 372, 272 S. W. 906, to the effect that a sheriff cannot execute process in an action in which he is a party or is interested. But we are cited to no case, and we know of none, wherein this court has held that a subpoena is void when served by a party to an action who has been appointed special bailiff for that purpose.

The Knott opinion, 58 Ky. 504, points out that the reason for sec. 737 in the then Civil Code of Practice

(1859), which is similar to sec. 667 of the present Code, is that it is inconsistent with public policy for an officer to serve process in his own case. But we cannot see how it can affect the impartial administration of justice for a party who has been appointed special bailiff to serve a subpoena upon his own witness. Therefore, we do not feel the trial judge abused his discretion under KRS 422.150 in permitting Dr. Richardson's testimony to be read.

We come now to the important question raised on this appeal. Is $5,000 excessive damages for the injury suffered by appellee?

Appellee's evidence shows he was 31 years of age at the time of the accident and that he was working six days a week in the mine as a handyman, or "gin man," at a wage of $6.30 per day. The blow he received fractured the bone of his right upper jaw, "peeled the gum back over his teeth," loosened several of them and knocked his jaw out of line so as to prevent proper occlusion. His face swelled until his eyes were closed and it was some eight or nine weeks before the swelling subsided. That during this period he suffered great pain and he still suffers from frequent headaches; that due to his teeth being knocked out of alignment he cannot chew solid foods and has been compelled to subsist upon a diet of liquids and soft foods, which has so reduced his strength that he had not been able to work; that he has tried several jobs and loses 15 or 20 pounds within a week and suffers unbearable headaches when he works.

Dr. J. B. Lovett, a dentist, testified that the X-ray disclosed a fracture of appellee's right upper jaw between the eyetooth and the bicuspid; that his teeth are not in normal apposition and are noticeably out of line and appellee is not able to masticate his food so as to normally digest it. It is Dr. Lovett's opinion that appellee's condition is permanent and that it will not improve. Dr. J. E. Richardson, another dentist, testified that appellee's teeth are out of line as a result of his accident and there is no method by which his mouth can be restored to its previous condition; that grinding the teeth would not correct the mouth but artificial teeth would.

Dr. R. D. Sanders, a physician testifying for appellant, stated that appellee's pain is caused from an infected tooth and the extraction of this tooth would likely relieve his pain. Dr. W. C. Lyons, a dentist called for appellant, stated that he examined appellee on May 24, 1946, and found his right eyetooth abscessed and recommended its extraction; but appellee refused to have it pulled "until this was all settled." It was Dr. Lyon's opinion that with this infected tooth pulled appellee could eat as well as he ever did and that grinding his teeth would help his occlusion.

Appellant, Ester Croley, and his son, Archie, both testified that appellee told them he would not have the infected tooth pulled until this case was settled. Appellee denied making such a statement to the father and stated he did not remember of making it to the son.

The testimony of Dr. Harry M. Underwood, a dental surgeon of Knoxville, Tenn., reported on the first trial, was read on behalf of appellant upon the instant trial. His testimony was that appellee's occlusion was good but that his upper right cuspid (or eyetooth) was dead and should be removed; that three of appellee's teeth are striking and that he could grind those off and appellee's mouth would return to normal; that his charge would be between $75 and $100. His opinion was that appellee had suffered no permanent injury.

Appellee admits receiving a letter of Jan. 1, 1945, from appellant's attorney saying that Dr. Underwood would remedy his mouth by grinding off a few teeth and requesting appellee to go to Knoxville and have him do this work, for which appellant would pay and would also bear appellee's personal expenses on the trip. But appellee refused to have the abscessed tooth pulled or to have his teeth ground in an effort to correct his occlusion.

It is always difficult to determine what damages are proper in this character of case, as there is no rule of law fixing the monetary measure of damages for pain and suffering in personal injury cases. The matter must be left to the sound discretion of the jury, whose verdict will not be disturbed unless it appears to have been influenced by prejudice or passion, or unless the jury has been misled as to the merits of the case. Even

though the verdict is larger than we might have given, we will not interfere with it if upon the whole case we think that the jury could reasonably have fixed the damages in the amount complained of on the evidence heard. Davis v. Smith, 264 Ky. 20, 94 S. W. 2d 20; Aetna Oil Co. v. Metcalf, 300 Ky. 817, 190 S. W. 2d 562.

In Columbia Amusement Co. v. Rye, 288 Ky. 179, 155 S. W. 2d 727, we upheld a verdict for $5,000 where a woman was confined in a hospital for 13 weeks and suffered great pain from a fractured pelvis, although she was not permanently injured. In Davis v. Smith, 264 Ky. 20, 94 S. W. 2d 20, we refused to reverse a judgment of $6,000 in favor of a child who was shot and severely wounded, although there was doubt as to whether or not his injuries were permanent. In the Metcalf case, 300 Ky. 817, 190 S. W. 2d 562, this court refused to say a $5,000 judgment for a serious and painful, but not permanent, head injury was excessive.

In the instant case the evidence was conflicting as to whether or not appellee's injuries are permanent. There is no doubt that his injuries were of a serious nature which caused him much pain and considerable loss of time from his work. The verdict is large, but we cannot say it is excessive or that it indicated passion or prejudice upon the part of the jury, therefore we will not disturb it. It is only in those cases where the verdict is so palpably excessive as to strike the mind at first blush as being the result of passion or prejudice that we feel authorized to reverse the judgment.

Lastly, appellant argues that it was appellee's duty to exercise ordinary care in having his injuries treated, as would an ordinarily prudent person similarly situated and in like circumstances, and if he failed to do so, then appellant is not liable for any aggravation of his pain or injuries which he may have suffered as a result from his failure to exercise ordinary care in this respect, citing City of Covington v. Keal, 280 Ky. 237, 133 S. W. 2d 49, 126 A. L. R. 905, and several of the cases referred to in that opinion. As above stated, there is a conflict in the evidence as to whether or not appellee's condition can be remedied or greatly improved by dental science and treatment. According to Dr. Underwood, it would be a simple and comparatively inexpensive matter to

correct appellee's condition; while Drs. Lovett and Richardson were of the opinion that the treatment suggested by Dr. Underwood would not remedy it. In an appropriate instruction the jury were told not to allow damages for any aggravation of appellee's condition resulting from his failure to use ordinary care to minimize his damages. In the light of the conflicting evidence, we cannot say the jury ignored this instruction, nor can we say that there was no evidence to support the finding of the jury that appellee did not refuse or fail to exercise ordinary care to minimize his damages.

The judgment is affirmed.