## Cumberland Quarries, Inc. v. Gibson.

May 9, 1950.

R. C. Tartar, Judge.

Davis, Boehl, Viser & Marcus and F. D. Curry for appellant.

L. C. Lawrence and J. A. Hicks for appellee.

JUDGE HELM—Affirming.

Appellee, Esco Gibson, in an action for personal injuries and damage to his automobile, was awarded a verdict and judgment for $4,000. Appellant, Cumberland Quarries, Inc., appeals, assigning as errors: (1) The court erred in not sustaining appellant's motion for a peremptory instruction; (2) the court erred in admitting incompetent evidence, and (3) the verdict was excessive.

Appellant in his petition, asked for $8,000 for "mental and physical pain and suffering and * * * permanent injuries"; $450 for damage to his automobile; $247.50 for loss of time, and $275.60 for medical and hospital expenses.

Appellant operates a quarry on Route 55, the access road from Albany to the Wolf Creek Dam, and furnishes crushed stone for concrete at the dam. The stone is carried by truck from the quarry to the dam over this road, a black surface road about 16 feet wide. At the times mentioned in this action the trucks were operated on a 24-hour schedule. Appellee and Ward McWhorter, Cecil Hoover, and Delmar Hoover were employed at the dam. They went to work at four p. m. and got off at 12 midnight. They traveled to and from work over the ac-

cess road in appellee's 1934 two-seated Ford automobile. On the morning of July 9, 1948, shortly after midnight, they were returning from work over this road, traveling south toward Albany. McWhorter was driving; appellee was also sitting in the front seat; Cecil and Delmar Hoover were sitting in the back. As they passed over a slight rise, a point where the road was straight for a considerable distance, they noticed a truck parked on their left side of the road. The truck was headed north toward the dam; its lights were "on bright." McWhorter was driving about 30 miles per hour. He and appellee say that the lights from the parked car blinded them; that McWhorter applied his brakes and slowed down; that another truck, facing toward Albany, was parked on the road opposite the truck facing north. Appellee's car crashed into the back end of the truck facing south. The truck which they struck was appellee's truck No. 28, returning empty from the dam. Appellee was thrown out of his car; he sustained a fracture of the lower jaw bone; had his knees "bruised up," and was rendered unconscious. The next thing he knew he was in the hospital. His car was damaged—torn "all to pieces."

For appellee it is testified that this truck passed his car about three-quarters of a mile before they reached the scene of the accident; that it had no reflectors or tail-lights on. They testified that as they approached the scene of the accident the truck of appellant was parked on their side of the road, headed in the same direction, and was without tail-lights, flares or warnings of any type; that the trucks were each parked on the pavement, side by side; that the pavement at that point was about 16 feet wide; that the bed on each truck was about 7 feet wide. Appellee and McWhorter say that the lights of the trucks facing north blinded them so that they did not see appellee's truck until they were within five or six feet of it.

The testimony for appellant is that appellant's truck was traveling toward Albany on Highway 55. It was being driven by George Patton, who was accompanied by John H. Stockton, a mechanic. As they were returning from the dam to the quarry, their attention was attracted to a truck facing toward the dam; its lights were blinking, indicating that the driver wished

appellant's truck to stop. The driver, Patton, put on his brakes and slowed down in order to speak to the driver of the other truck, but had not completely stopped when appellant's truck was struck from behind by appellee's automobile and pushed down the road about 25 feet. Appellant's truck was still rolling at the time it was struck and the driver had started to pull off the highway. He had thrown out his hand to indicate that he was stopping when he saw the lights of the other truck blinking. It was testified that there were three lights and two reflectors on the rear end of appellant's truck. An examination the night before the collision revealed that the lights were in good condition. It was testified that immediately after the collision two of the lights were burning, and that one of the lights had been knocked out by the impact. Both of the reflectors were on.

Appellee was removed to the Glasgow Hospital where he remained eight days. Later he went back and forth to the hospital for treatment. His jaw bone was wired together in four places; he could only eat soft food, soup and milk, for more than six weeks; one tooth was knocked loose, another was pulled because of injuries at the time of the collision; he lost five weeks and three days from his work; he was earning an average of around $45 a week; his hospital bill was $125, his doctor's bill was $60; he has to have his teeth replaced, which his dentist told him would be about $35; he suffered "a lot," his jaws "almost killed him" for three or four days after the accident; he has difficulty in chewing, owing to the stiffness of his jaws; he can't open his mouth as wide as he could before the accident, and he can't eat anything that is "too hard."

Dr. Bryant, physician of Glasgow whose deposition was taken upon interrogations, found that appellee "had compound fracture of mandible and lacerations of chin and face." He sutured the lacerations and referred him to Dr. Mayfield for fracture of mandible. Dr. Mayfield, a dentist of Glasgow whose deposition also was taken upon interrogatories, when asked what permanent injuries, if any, appellee has, answered, "Weakness of mandible." Asked as to the percentage of permanent disability, if any, to appellee's jaw, he said, "I would say not over 10 or 15 per cent, to the best of my judgment." The doctor said there is no further surgical

treatment which would improve the condition of appellee's jaw.

Appellent contends that appellee's testimony as to doctor's bills and medical expense was insufficient. Appellee testified, in substance, that he paid a hospital bill of $125, and a doctor's bill of $60. Appellant also contends that there was no competent evidence as to the market value of the damaged car to submit to the jury. Appellee, the owner of the car, stated that his car was worth about $400 before it was wrecked, and about $50 after it was wrecked. Delmar Hoover, who stated that he had been buying cars off and on since 1941, described appellee's car and gave it as his opinion that its market value immediately before the accident was from $400 to $450, and immediately after the accident was $50. While some of this evidence is not as satisfactory as it might have been, we do not believe it was so unsatisfactory as to authorize a reversal of the judgement.

Appellant maintains appellee was guilty of contributory negligence as a matter of law. Appellee and the driver, McWhorter, say that they were blinded by the bright lights of the parked truck; that McWhorter applied his brakes and slowed down; that appellant's truck did not have any lights or reflectors on its rear end; that they did not see it until they were within a few feet of it; that it was parked opposite the truck facing north, the two trucks blocking the road at this point. According to the testimony for appellant its truck did have lights and reflectors on the rear end; the driver, when he saw the lights of the parked truck blinking, slowed down and at the time of the collision had not stopped but was proceeding slowly and was getting ready to pull off on his right side of the highway.

In City of Providence v. Young, 227 Ky. 690, 13 S. W. 2d 1022, 1023, we said: ''There are cases from sister states that go so far as to hold that when the driver of a motor vehicle is unable to see ahead he must stop or proceed at his peril. * * * But under our law the standard of ordinary care governs the subject, and when the circumstances are so equivocal that reasonable men may disagree as to the particular duty or course of conduct demanded by the situation, the matter must be determined by a jury. *.* *'' See, Lexington-Hazard Express Company v. Umberger, 243 Ky. 419, 48 S. W. 2d 1066.

In the present case the circumstances are so uncertain and the evidence so conflicting that reasonable men may disagree as to the course of conduct demanded by the situation. Under all the testimony the question was one to be determined by a jury.

Appellant urges that the verdict was excessive. There was some evidence—that of Dr. Mayfield—tending to show that appellee has some permanent disability to his jaw as a result of its fracture. We find, however, that the instructions cover only pain and suffering, loss of time, medical and hospital expenses, and damage to his "truck." No instruction was offered or given on permanent impairment. The instructions allowed a maximum of $400 for damages to the car, $185 for medical and hospital expenses, and $225 for time lost, a total of $810. The verdict was for $4,000. Assuming that the jury allowed the full amount for these items, by their verdict they allowed $3,190 for pain and suffering.

In Croley v. Huddleston, 304 Ky. 811, 202, S. W. 2d 637, 640, we said: "It is always difficult to determine what damages are proper in this character of case, as there is no rule of law fixing the monetary measure of damages for pain and suffering in personal injury cases. The matter must be left to the sound discretion of the jury, whose verdict will not be disturbed unless it appears to have been influenced by prejudice or passion, or unless the jury has been misled as to the merits of the case. Even though the verdict is larger than we might have given, we will not interfere with it if upon the whole case we think that the jury could reasonably have fixed the damages in the amount complained of on the evidence heard.  *  *  *"

Under all the facts and circumstances of this case, we are unable to say that the verdict is so palpably excessive as to strike the mind at first blush as being the result of passion or prejudice.

The judgment was affirmed.