## Reno et al. v. Katterjohn.

May 16, 1950.

Elvis J. Stahr, Judge.

34

M. C. Anderson for appellants.

Adrian H. Terrell for appellee.

JUDGE KNIGHT—Affirming

## Statement of the Case

This suit was brought by appellee against Ralph Reno and appellant D. W. Reno. It sought judgment against the former in the sum of $1855.70, with interest, for concrete blocks sold to him by appellee, asked for a general order of attachment against his property, including a certain motor truck, and asked that the transfer of the described motor truck, which transfer had been made to appellant D. W. Reno, father of Ralph Reno, a short while before the suit was filed, be cancelled and that said truck be sold to satisfy a debt due appellee. It was alleged that the transfer of said truck was made with fraudulent intent to defeat collection of appellee's claim. By amended petition, appellant Jesse Reno, brother of Ralph Reno, was made a party defendant because he claimed ownership of the truck involved. By his answer, appellant Jesse Reno set up claim to complete ownership of the truck prior to October 9, 1948, at which time he says he transferred it to appellant D. W. Reno for a valuable consideration and, by separate answer, appellant D. W. Reno claimed ownership of the truck by virtue of said transfer, both denying that said transfer was made to defraud appellee or to defeat collection of his claim against Ralph Reno.

The pleadings made a definite issue as to the ownership of the truck and, after hearing considerable proof, the Chancellor decided that prior to October 9, 1948, the truck here involved was jointly owned by appellant Jesse Reno and his brother Ralph Reno; that when on that date Ralph Reno executed a bill of sale transferring his undivided half interest in said truck to his father D. W. Reno, he did so without a valuable consideration and with intent to hinder, delay and defeat appellee in the collection of the indebtedness due him from Ralph, but that the transfer on that date of the one half interest of Jesse Reno in said truck passed

title of Jesse and vested same in D. W. Reno who was adjudged to be owner of the other half interest by virtue of said transfer. Judgment was entered in favor of appellee against Ralph Reno for $1855.70 with 6% interest until paid, the attachment was sustained, and the Master Commissioner was directed to sell the undivided half interest of Ralph Reno in the truck to satisfy said debt. This was done and appellee became purchaser at the public sale for $300 to be credited on his judgment. This half interest was appraised at $1500.

On the motion of appellants, D. W. and Jesse Reno, which was objected to by appellee, there was incorporated into the last paragraph of the judgment this sentence: "* * * this cause is left open for granting to them of such equitable relief, if any, to which the Court may find they are entitled upon the filing of additional pleadings herein." After the entry of the above judgment, appellants tendered and offered to file a new pleading styled: "Amended and supplemental answer, counter-claim and cross-petition of D. W. Reno and joint motion of D. W. Reno and Jesse Reno to set aside, modify, amend and extend judgment herein." By this pleading, they do not recede from the position taken in their original pleadings, that Ralph Reno had no interest in the truck attached and that the truck was entirely owned by Jesse Reno before it was transferred to D. W. Reno on October 9, 1948, and that Ralph Reno worked for them before and after that date in the operation of said truck. They ask that the judgment be set aside, modified and extended to carry out that contention which they think they established by the proof. However, they now offer to plead in the alternative and say that if Jesse Reno was not the sole owner of the truck, as contended in the original pleadings, then Jesse Reno and Ralph Reno were the joint owners of the truck, as recited in the judgment, and its ownership was a joint venture and a co-partnership and, as such, before any creditor of Ralph Reno could subject the attached truck to the payment of his debts, the debts owing by the joint venture or co-partnership must be fully paid, together with any indebtedness owing to Jesse by Ralph connected with the operation of the business, claimed to be about $1775.34. They ask that the proceeds of the sale of the half interest in the truck be applied to the payment of debts of the co-partnership, in-

cluding the amount claimed due Jesse Reno, before same is applied to the individual debt of Ralph Reno. The Chancellor sustained appellee's objection to the filing of this pleading and refused to permit it to be filed, but directed that it be left in the record for purposes of appeal.

## Points on Appeal

We therefore have two questions raised on this appeal: (1) Did the Chancellor err in his finding of fact that Ralph Reno was the owner of a half interest in the truck and that the transfer to his father was for the purpose of defrauding appellee in the collection of his debt? (2) Did the Chancellor err in refusing to permit the filing of the amended pleading after judgment?

### I

On the first question considerable proof was taken, all of it, except that part which was taken as if on cross-examination, being heard orally before the Chancellor who thus had an opportunity to observe the demeanor of the witnesses, an important element in this particular case, where it appears to us from reading the evidence that there was an attempt to "cover up" for Ralph Reno in appellee's effort to collect a debt admittedly due him from Ralph.

While the direct testimony of appellants tended to sustain their contention of the ownership of the truck by Jesse Reno when it was transferred to D. W. Reno, the following facts, based principally on documentary evidence in the record, establish a basis for the Chancellor's finding of part ownership of the truck by Ralph Reno:

The first truck, a 1942 Ford tractor-trailer, was bought on December 20, 1945, and while the down purchase price of $2460.68 was paid by the personal check of Jesse Reno, possibly by some arrangement between them not shown in the record, a joint note was executed by Ralph and Jesse to the Morris Plan Bank for the balance of $1636.16. Later, in December 1947, they went together to Arkansas where they traded the Ford tractor part of the truck for a 1944 G. M. C. tractor. There was a difference of $950 which had to be given in the trade and this was obtained from a bank in Wickliffe to secure which both Ralph and Jesse, together with

their father, signed a joint note. When the 1944 G. M. C. truck was registered for the first time, it having come from another state, both Ralph and Jesse made and signed the necessary affidavit for that purpose. The license for the truck was issued in both names for the years 1947 and 1948. In the meantime Jesse had bought his father's shoe shop and was devoting most of his time to that, while the truck was being solely operated by Ralph. On October 4, 1948, the manager of appellee company, which is located in Paducah, went to Wickliffe to see Ralph in an effort to collect the debt which he owed the company. He was unable to see Ralph but talked to his father, D. W. Reno, about the debt and he testified that the father said he would tell Ralph and get him to take care of it. It was only five days after this visit, to-wit, on October 9, 1948, which was on Saturday, that a seemingly hurried bill of sale was executed to D. W. Reno. Although only a few blocks from the courthouse, Jesse could not find time to go to the courthouse for the few minutes necessary to make the transfer and although the records in the clerk's office showed the truck registered in both names, only Ralph signed it, but as the agent of Jesse. The recited consideration was $1.00. The signature as shown on the bill of sale filed in the record is "Jesse Reno by Ralph Reno." Ralph did not sign individually. Documentary evidence and physical facts, such as shown above, strongly point to part ownership of the truck by Ralph Reno in spite of the testimony of Jesse, that he owned the truck and hired Ralph to operate it, first on a weekly salary and later on a commission basis, and of D. W. Reno, that after the truck was transferred to him, Ralph operated for him on a salary or commission basis.

In the light of this and other testimony shown in the record, which we will not analyze in detail but all of which we have carefully read and considered, it is our opinion that it justified the conclusion of the Chancellor that Ralph Reno owned a half interest in the truck at the time it was transferred to his father on October 9, 1948, when appellee was pushing him for collection of a debt which Ralph had incurred more than a year before under circumstances not too favorable to himself and not necessary to detail here. Certainly we entertain no more than a doubt of the correctness of the Chancellor's finding on this question of fact and under our prac-

tice a reversal would not be justified on this phase of the case.

## II

We do not think the Chancellor erred in refusing to permit the filing of the amended pleading which was tendered after judgment. Sec. 134 of the Civil Code of Practice gives the trial courts wide discretion in the filing of additional pleadings in furtherance of justice, but one of the limitations imposed on that discretion is that "the amendment does not change substantially the claim or defense." The entire defense in the suit, as set out in the pleadings and as was sought to be sustained by the evidence introduced by appellants, was that Ralph Reno had no interest in the truck; that it was owned solely by Jesse Reno; and that it was operated by Ralph on a salary basis or, at times, on the basis of a share of the profits. We think it too late to change that defense after submission of the case and entry of judgment, and to present a new defense inconsistent with the former one, even though the lower court found on the evidence that the truck was jointly owned. It would be an abuse of discretion to set aside a judgment and permit the filing of amended pleadings which substantially change the defense. Wilkes v. Kitchen, 187 Ky. 211, 218 S. W. 718; Christen v. Christen, 184 Ky. 822, 213 S. W. 189. Permission to file amended pleadings is largely within the discretion of the trial court and this court will not interfere with a ruling on such a question unless it clearly appears that the trial court abused its discretion. Central Trust Co. of Owensboro v. Moffitt, 294 Ky. 103, 171 S. W. 2d 21; Asher v. Golden, 232 Ky. 1, 22 S. W. 2d 411. The trial court did not abuse its discretion in refusing the tendered pleading. It would have abused it had the judgment been set aside and the filing of a new pleading permitted which substantially changed the defense. Reversal would not therefore be justified on this phase of the case.

Wherefore the judgment is affirmed.