## ASHTON v. ROOP.

Court of Appeals of Kentucky.
Nov. 30, 1951.

Otto C. Martin, Hartford, W. D. Bratcher, Greenville, for appellant.

Jarvis & Ross, Greenville, for appellee.

MOREMEN, Judge.

Appellant, Hugh P. Ashton, filed a petition in the circuit court by which he sought to recover damages resulting from alleged negligence of appellee, J. M. Roop, in the operation of a motor vehicle. Appellee filed an answer and counterclaim which contained .(1) a traverse; (2) a plea of contributory negligence; and (3) a counterclaim for property damages alleged to have been sustained by him. Upon the trial of the case, the jury refused to award damages to either party, and in this appeal from a judgment entered on the verdict, appellant assigns as reversible errors that: (1) appellant was entitled to a verdict under the evidence offered; (2) appellee was

guilty of negligence per se and as a matter of law; (3) the negligence of appellee was the proximate cause of the collision; (4) the verdict of the jury was contrary to the law and evidence; (5) the court erred in refusing to give an instruction offered by appellant; and (6) the instructions given by the court were erroneous.

At about 7:30 p. m. on April 23, 1949, appellant, with his wife and child and two other children, was driving on highway 62 from Central City in the direction of Rockport when the lights of his car either went out completely or became so dim that he could not see the road plainly. The road at this place had a black top surface 20 feet in width with a shoulder on each side approximately 5 to 7½ feet in width. Appellant stopped the car, his passengers got out, and he reached under the dash and attempted to correct the condition of the lights. While he was so engaged, Mr. Peveler, who was driving a truck in the opposite direction, momentarily stopped and inquired if he could be of any assistance and, upon being told that he could not, drove on. At this time, and after Peveler had drawn away, a car driven by appellant Roop, who was traveling in the same direction as appellant, came around a curve and approached the scene of the accident. Roop was temporarily blinded by the lights of Peveler's truck and, when he came out of their glare, he was about 60 feet from appellant's parked car, which he attempted to avoid by swerving to the left. The right front bumper and fender of his car struck the left rear fender and wheel of the Ashton car a glancing blow, which knocked the car about 6 to 10 feet up the road. Roop ran into a ditch on the left side of the road.

The position of Ashton's car immediately before the collision is in dispute. Appellant, and his wife, testified that he had driven both right wheels off the black top surface before he parked his car and commenced to repair it. Roop testified that the car was entirely on the black top before he struck it, and was only a few feet on the shoulder after he struck it. Earl and Celstine Peveler, the only disinterested eyewitnesses, testified that the car was parked on the surfaced portion of the road—about a foot and a half to the right of the center line. A State Trooper, who arrived at the scene of the accident shortly after it occurred, stated that Ashton's car was on the right hand side of the traveled surface of the road.

There was also a controversy concerning the speed of the Roop car. Mrs. Ashton testified, "He was coming at an awful reckless speed. I couldn't tell, exactly, he was coming so fast I was afraid to try"; and that he did not slacken his speed until he hit appellant's automobile. Roop stated that he was driving at a rate of 30 to 40 miles per hour. Mr. Peveler refused to estimate his rate of speed, but stated Roop "wasn't running too fast."

Appellant first argues that under the terms of KRS 189.450(1), which reads: "No person shall stop a vehicle, leave it standing or cause or permit it to stop or to be left standing upon the main traveled portion of a highway that is not a city street for the purpose of making repairs on it. This subsection shall not apply to a vehicle that has been disabled while on the main traveled portion of such a highway in such a manner and to such extent that it is impossible to avoid the occupation of the main traveled portion or impractible to remove it from the highway until repairs have been made or sufficient help obtained for its removal", he had an absolute right to repair his car while it was parked on the highway because he was charged with the duty, under the law, to stop and to drive no further with defective lights. It is true that the exception in the above statute removes the force of its mandate in cases where it is impossible to avoid the occupation of the road, but in the case at bar there was a serious question of fact concerning whether it was necessary for Ashton's car to occupy the road at all. Ashton stated, "The black-top is twenty (20) feet wide, and on this right-hand side that I was on, the shoulder was 7½ feet, and on the left shoulder it was five (5)." He also testified:

"Q. 21. How far did you travel with your lights dim as you say? A. Well,

I just pulled over on the shoulder, I would say maybe twenty-five or thirty feet.

"Q. 22. I will ask you in your deposition if you didn't say you had travelled some hundred feet when you started pulling over? A. I might.

"Q. 23. Well, did you, or didn't you, say that? A. I guess I did."

■ Under this evidence, a question is presented concerning whether appellant was negligent in his failure to drive his car a few more feet and remove it entirely from the road and out of the stream of traffic, and whether or not the car was so disabled that it was impossible to avoid the occupation of the road. These questions were properly addressed to the jury.

Under the second, third, and fourth assigned errors, appellant argues that when appellee was blinded momentarily by the light from the truck, he gave no signal, and continued at a speed of 40 miles per hour; that this action constituted negligence per se and as a matter of law was the proximate cause of the collision and, therefore, the verdict of the jury was contrary to the law and evidence. This argument assumes, first, that appellant, himself, was without fault, and then reliance is placed upon the case of Lexington-Hazard Express Co. v. Umberger, 243 Ky. 419, 48 S.W.2d 1066, wherein it was held that a motorist blinded by lights while rounding a curve, who did not take immediate precautions to avoid a collision with a parked car, was guilty of contributory negligence as a matter of law. We are, therefore, faced with the question of whether the rule announced in that case is correct.

The language used in the Lexington-Hazard Express Co. v. Umberger case was broad in scope. It has been necessary for this court, on a number of occasions, to distinguish it from other cases on the basis that there existed some difference in facts between them. Again, we have applied its rule without comment and without distinction. In order to recognize this dichotomy, we are compelled to review a few of the cases, and laboriously set forth facts and rulings of law.

In the case of Bradley et al. v. Clarke, 1927, 219 Ky. 438, 293 S.W. 1082, these were the facts: Appellant parked his truck, with lights burning, in the road while he walked back to repair a stalled car. Appellee, driving in the opposite direction, saw the truck's lights, passed on the right side of the road, and struck the stalled car. It is difficult to determine from the opinion the true position of the various cars involved, but there was conflict in the evidence as to whether the truck was on the left-hand side of the road and whether appellee slackened the speed of his car when he saw the lights. The court held that appellee was not guilty of contributory negligence as a matter of law, and indicated that if appellee had known the truck was stopped, he might have been guilty of contributory negligence as a matter of law.

In the case of Lexington-Hazard Express Co. v. Umberger, 1932, cited above, Mc-Lane, while driving an automobile northwardly at night, sustained a mishap to his car. The car was disabled and left at an angle across the road. The road at this point curved sharply. Appellant's truck, also proceeding northwardly, was blocked by McLane's automobile. The truck was stopped on its right-hand side of the road, but there was a dispute as to how far to the right it was stopped. The truck's taillight was burning. An automobile going south driven by B. C. Barton passed the truck with difficulty and continued on. As Barton rounded the curve southwardly of where the truck and McLane's car were stopped, the appellee, Gamble, driving the automobile of appellee, Umberger, passed him. Gamble, who was driving about 25 miles per hour, was blinded momentarily by the lights from Barton's car and, before his vision cleared, he was too close to the truck to avoid a collision. We held that appellee, Gamble, was under duty to slacken the speed of his car after being blinded by oncoming lights and that by his failure to do so, he was guilty of contributory negligence as a matter of law.

In the case of Roederer's Adm'x v. Gray, 1934, 253 Ky. 669, 69 S.W.2d 998, an un-

lighted wagon driven by decedent was struck from the rear by an automobile driven by appellee. The incident occurred at night on a slight curve in a city street. Appellee contended that due to the curve his lights were deflected to such an extent he was unable to see the wagon until he was 10 or 15 feet away. Appellant offered evidence showing that the curve was so slight that the wagon should have been visible from 250 feet. It was held that this state of fact presented a question for the jury. Application of the rule in the Lexington-Hazard Express Co. case was not made because the court found a distinction of fact.

In the case of Turpin v. Scrivner, March 3, 1944, 297 Ky. 365, 178 S.W.2d 971, the following facts were presented: Plaintiff's decedent was driving north in good daylight and defendant was driving in the same direction in a truck. Defendant stopped his truck on the highway, using his rear view mirror and giving a hand signal. Plaintiff's decedent approached defendant from the rear at a speed of 30 miles per hour, saw the truck 150 feet ahead of him, and assumed that it was moving. He slowed to 25 miles per hour when he determined that the truck had stopped, but not in time to avoid the collision. The court distinguished this case from the Lexington-Hazard Express Co. case under the facts presented and held that since there was a dispute as to whether a portion of defendant's truck protruded over the center line, the question of this negligence should have been submitted to the jury, together with the question as to whether plaintiff's decedent's negligence was the proximate cause of the injury.

The Lexington-Hazard Express Co. case was again distinguished under the facts in the case of Linder v. Davis, 1949, 309 Ky. 668, 218 S.W.2d 673, 674, where plaintiff Linder's car collided with defendant Davis' approaching automobile while making a left-hand turn on a traffic light that was green to both. The court directed a verdict for defendant. We said:

"The trial judge evidently based his peremptory instruction upon the fact that the Davis car was standing still and that young Linder told Davis he did not see his car. But the judge lost sight of the traffic code of the city which provides in effect that the driver of a car about to turn left must yield the right-of-way to any vehicle approaching from the opposite direction. General Ordinances, City of Louisville (1943 Compilation) page 1596. Courts of this Commonwealth take judicial notice of the ordinances of the City of Louisville, KRS 83.080. Davis' violation of this ordinance was negligence per se, but such negligence does not allow plaintiff to recover as a matter of law, unless it was the direct and proximate cause of the accident, any more than Linder's alleged negligence permits Davis to recover on his counterclaim against plaintiff, unless the negligence of Linder was the direct and proximate cause of the accident.

"Therefore in the circumstances in this case, the court should have submitted to the jury under appropriate instructions for a determination of whose negligence was, or was not, the proximate, or contributing, cause of the collision. Home Laundry Co. v. Cook, 277 Ky. 8, 125 S.W.2d 763; Rutherford v. Smith, 284 Ky. 592, 145 S.W. 2d 533; Murphy v. Homans, 286 Ky. 191, 150 S.W.2d 14.

"In support of his argument that the trial court properly directed a verdict in his favor, Davis relies upon such cases as Sutter's [Sutter's] Adm'r v. Ky. Power & Light Co., 256 Ky. 356, 76 S.W.2d 29, 32; Lexington-Hazard Express Co. v. Umberger, 243 Ky. 419, 48 S.W.2d 1066; Monroe v. Townsend, 308 Ky. 123, 213 S. W.2d 803. Without going into a discussion of these authorities, it will suffice to say that an examination of them reveals that the facts under consideration in those opinions clearly distinguish those cases from the instant one."

In the case of Freeman v. W. T. Sistrunk & Co., March 7, 1950, 312 Ky. 438, 227 S.W.2d 979, the facts were as follows: Appellee's truck stalled at night upon a clear, straight highway. The lights were burning. A companion of the truck driver signaled with a flashlight an oncoming automobile, being driven by appellant, when it was 200 to 300 feet away and approach-

ing the scene of the accident at a speed estimated to be between 45 and 60 miles per hour. Appellant admitted seeing the truck, but assumed it was moving and the automobile struck the rear end of the truck. The court held that appellant was guilty of contributory negligence as a matter of law and relied upon the Lexington-Hazard Express Co. case for its authority.

We held that it was a question for the jury in the case of Cumberland Quarries, Inc. v. Gibson, May 9, 1950, 312 Ky. 802, 229 S.W.2d 978, 981, where the facts showed that appellee was driving southwardly at night on a straight road at a speed of 30 miles per hour. When he was passing over a slight rise, appellee noticed a truck parked on the left-hand side of the road facing north, the lights "on bright," which blinded the driver who applied his brakes and slowed down. Appellee contended that another truck belonging to appellant and proceeding in the opposite direction from his first truck, stopped beside it so that the drivers could talk, and that this truck was proceeding in the same direction as appellee was proceeding, and had no rear lights. Appellant contended that the truck was moving and had statutory lights. 'Appellee's car struck the rear of the south bound truck. It was contended that appellee was guilty of contributory negligence as a matter of law in that he failed to stop completely when he was blinded by the lights. The court said: "In City of Providence v. Young, 227 Ky. 690, 13 S.W.2d 1022, 1023, we said: 'There are cases from sister states that go so far as to hold that when the driver of a motor vehicle is unable to see ahead, he must stop or proceed at his peril. * * * But under our law the standard of ordinary care governs the subject, and when the circumstances are so equivocal that reasonable men may disagree as to the particular duty or course of conduct demanded by the situation, the matter must be determined by a jury. * * *'' See, Lexington-Hazard Express Company v. Umberger, 243 Ky. 419, 48 S.W.2d 1066."

It may be remarked that here the Lexington-Hazard Express Co. case is cited as authority for the proposition that the question must be determined by a jury.

From the above summary of the cases, it is apparent that it is very difficult to draw the line of demarcation between facts that require a submission to the jury and facts that we have held to be sufficient as a matter of law to constitute negligence. It will be noted that in many of the cases, the Lexington-Hazard Express Co. case, 243 Ky. 419, 48 S.W.2d 1066, has been distinguished when little, if any, difference in facts existed for the distinction, and we think it is necessary to face the question as to whether or not that case and the case of Freeman v. W. T. Sistrunk & Co., 312 Ky. 438, 227 S.W.2d 979, clearly announce the rule properly applicable. We believe that they do not because in each case an absolute duty is placed upon the approaching vehicle to avoid a collision, regardless of the character of the act which placed the stationary vehicle on the road. The proximate cause of the accident is not given proper consideration. Appearance of a negligent act is confused with the reality of the cause of the accident.

█ In the case at bar, both parties may have been guilty of acts which were negligent per se: appellant, when he undertook to repair his car while it was on a portion of the travelled surface of the road, and appellee, when he failed to slacken his speed while his field of vision was diminished by approaching lights. Appellant's act, in isolation, may have been negligent because he violated a statute. Appellee's act, taken alone, may have been negligent because he also violated a statute (to keep a look-out ahead) and failed to lessen his speed. But no contained, immured act or acts caused the accident. The resultant, continuing force of either act may have caused it, or, the concurring force initiated by both acts may have been responsible. The immediate cause, the last link in the chain of causation, is the important one, and it is within the province of the jury to determine whether this link has existence.

█ The trial court properly submitted the question of proximate cause to the jury.

█ Appellant complains that the instructions to the jury given by the court were improper and that the court erred in

refusing to give an instruction offered by him. The instruction offered embodied the last clear chance theory. The instructions given by the court correctly summarize the law applicable to this particular case. Instruction No. 1 defined the duty of appellee as to speed; regard for safety of others; manner and place of operation; and degree of care to be exercised. It informed the jury as to its duty if it found that appellant had failed in any of his duties. It marked the jury's course of action if it believed that both parties were negligent. Instruction No. 2 set out measure of damages if recovery was had by appellant. Instruction No. 3, similarly to instructions 1 and 2, defined duties of appellant and stated measure of damages. Instruction No. 4 defined "negligence" and "ordinary care." Instruction No. 5 stated defendant's duty if, in fact, he had had his vision impaired by lights. This instruction placed a duty upon appellee to stop or slacken his speed, and thereby charged appellee with a greater duty than did the instruction offered by appellant that required, if appellee discovered or could have discovered appellant's peril, to avoid injuring him "by all means at his hand." We are of opinion that the instructions given were sufficient and that minor defects which appeared in them were not prejudicial to appellant who received, it seems to us, a fair trial.

Wherefore, the judgment is affirmed.